STATE of Wisconsin, Plaintiff-Respondent,

v.

Richard T. NEUDORFF, Defendant-Appellant.

Court of Appeals

*No. 91-2695-CR. Submitted on briefs June 30, 1992.—Decided August 19, 1992.*

(Also reported in 489 N.W.2d 689.)

610

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Richard L. Kaiser* of *William A. Pangman & Associates, S.C.* of Waukesha.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Gregory M. Posner-Weber,* assistant attorney general.

Before Nettesheim, P.J., Brown and Snyder, JJ.

BROWN, J. Richard T. Neudorff appeals his conviction for conspiracy to deliver cocaine, arguing that he was deprived of his due process right to put on a defense because the state amended the original information on the morning of trial. The amendment changed the charge from possession of cocaine with intent to deliver to a charge of conspiracy to deliver. Neudorff also argues that the trail court erred when it denied his request to introduce both the original and amended information as evidence at trial.

We conclude that the amendment on the morning of trial prejudiced Neudorff because it presented a new charge with new elements and thus did not give him sufficient notice to prepare a defense. Therefore, we reverse the judgment of conviction and remand for a new trial.

On June 13, 1989, following a John Doe investigation, a four-count criminal complaint was issued charging Neudorff and three other individuals with various drug-related offenses. After a preliminary hearing on August 1, 1989, a four-count information was issued. Two of those counts applied to Neudorff. Count I charged that Neudorff conspired "with persons known and unknown" between June 1, 1987 and June 20, 1988 to deliver more than thirty grams of cocaine. Count III charged that between May 1, 1988 and June 20, 1988, Neudorff possessed more than thirty grams of cocaine with intent to deliver.

At the preliminary hearing, one of the items of evidence was a statement by Larry Rosenbaum. Rosenbaum refused to testify at the hearing, but a police investigator who had previously taken the statement from Rosenbaum testified and entered Rosenbaum's statement into the record. In the statement, Rosenbaum said he saw approximately one kilogram of cocaine in Neudorff's residence after Neudorff returned from Florida near the end of the spring school semester in 1988. Rosenbaum's statement previously had been included in paragraph twelve of the factual allegations supporting the original complaint, but Rosenbaum's name was not mentioned in any of the counts charged in the complaint, nor did Rosenbaum's name appear in the information.

Three days before trial, the prosecutor contacted Neudorff's counsel to tell him that Rosenbaum would be testifying not only that he saw a kilogram of cocaine in Neudorff's apartment, as the statement to the police investigator alleged, but also that he himself brought cocaine from Florida and supplied it to Neudorff. The prosecutor did not indicate that the state would seek to

amend the information to charge Neudorff with conspiracy rather than possession.

However, on the morning of trial, the state moved to amend Count III.[1] The amended Count II charged that Neudorff conspired between August 1, 1988 and December 31, 1988 "with Lawrence Rosenbaum and persons known and unknown" to deliver more than thirty grams of cocaine. During the ensuing argument on the motion, the state made a second motion to move the starting date of the conspiracy back to May 1, 1988. The court granted the state's motions.

Following the court's ruling on the amendment and prior to jury selection, Neudorff requested severance of Count II from Count I, based on surprise and lack of preparation to defend on the new charge in Count II. The court took this under advisement.

During trial, Neudorff repeatedly renewed his objections to the amendment and to Rosenbaum's testimony on the amended count. However, the court kept the severance motion under advisement until the sentencing hearing three months after the end of the trial. During trial, Neudorff also requested that he be permitted to introduce into evidence both the original information and the amended information. The court denied this request. The jury acquitted Neudorff of the conspiracy charge in Count I but convicted him of the amended charge of conspiracy with Rosenbaum in Count II.

On appeal, Neudorff contends that the amendment violated his due process right to notice of the charges against him. He claims he was prejudiced by the amend-

---

[1]The original Count III was designated Count II after the amendment because Neudorff was tried separately from the other persons charged in the information and only two counts in the original information related to him. We will refer to the amended Count III as Count II in this opinion.

ment because he was prepared to defend against the charge of possession between May 1 and June 20, 1988, but not against the amended charge that he engaged in a conspiracy between May 1 and December 31, 1988.

Neudorff's planned defense for the original charge was that the cocaine Rosenbaum claimed to have seen in Neudorff's apartment was actually fake cocaine. Neudorff claimed it was a concoction that he and some friends put together for another friend, Michael Schumacher, to try to break Schumacher of his addiction to cocaine. Neudorff's roommate, Joseph Noon, testified at trial and corroborated Neudorff's story in this regard. Schumacher himself also corroborated the story because he testified that he received a large quantity of a white substance from Neudorff in the early summer of 1988 but that he and others who tried it concluded it was not cocaine. He further testified that he threw out most of the substance as "junk" and did not pay Neudorff for most of it.

Neudorff's argument on appeal is that this testimony provided him with a defense for the possession charge but not for the conspiracy charge. He contends that, under the possession charge, the state would have to prove he knowingly had cocaine under his actual physical control and intended to deliver it. Neudorff maintains that the state could not meet this burden of proof with Rosenbaum's original statement saying he saw cocaine in Neudorff's apartment because of the testimony that what Rosenbaum saw was fake. However, under the conspiracy charge, the state did not have to prove Neudorff actually possessed cocaine. The state simply had to prove that Neudorff intended the delivery of cocaine and conspired with Rosenbaum to effect the cocaine's delivery. Neudorff argues that Rosenbaum's changed statement and the expansion of dates in the

amended charge unfairly denied him an opportunity to develop a defense. He requests a new trial.

We will not reverse a trial court's decision to amend an information unless there was a clear or manifest misuse of discretion. *State v. Flakes,* 140 Wis. 2d 411, 416, 410 N.W.2d 614, 616 (Ct. App. 1987). There is a misuse of discretion if the defendant is prejudiced by the amendment. *See id.* Rights of the defendant which may be prejudiced by an amendment are the rights to notice, speedy trial and the opportunity to defend. *Whitaker v. State,* 83 Wis. 2d 368, 374, 265 N.W.2d 575, 579 (1978).

The first issue we address is the state's argument that Neudorff waived his right to challenge the amendment because he requested severance of Count II from Count I rather than requesting a continuance. While a motion for continuance may have been the more proper request, we are not persuaded that the motion for severance was inappropriate. The record shows that Neudorff's major claim was surprise resulting from the amendment and that he was not prepared to defend against it. All parties were under the tacit, if not express, agreement that Count I should proceed to trial since both sides were ready to try it. The question was whether to proceed as to Count II. Under these facts, a severance rather than a continuance appeared to be a viable remedy. In fact, the trial court encouraged Neudorff to pursue the severance motion. The court stated:

> I was thinking that that may be the proper remedy for the defense here. I may consider that yet. I'll take your motion under advisement, Mr. Kaiser [defense counsel]. I may either sever it or dismiss it depending

on how the case comes out. There may be some real problems of surprise you may develop in this case.

This court and our supreme court have in the past explained that they will not elevate form over substance when addressing waiver arguments. The keystone of any waiver argument is whether a party has registered an objection with sufficient prominence such that the court understands what it is asked to rule upon. *State v. Barthels,* 166 Wis. 2d 876, 884, 480 N.W.2d 814, 818 (Ct. App. 1992) *cert. granted,* 485 N.W.2d 412 (April 7, 1992). Where the grounds of objection are obvious, the specific ground of objection is not important. *Champlain v. State,* 53 Wis. 2d 751, 758, 193 N.W.2d 868, 873 (1972).

■ Here, the trial court was fully apprised of the nature of Neudorff's objection to the amendment; he was surprised and did not want to try Count II on that day even though he could proceed as to Count I. We conclude that Neudorff did not waive his right to appeal by requesting severance rather than continuance.

■ Now to the issue of the amendment. The state depends on *State v. Burke,* 153 Wis. 2d 445, 451 N.W.2d 739 (1990). In *Burke,* the information contained five counts, with two of the counts being ones which the state had dismissed at the preliminary hearing. *Id.* at 449–50, 451 N.W.2d at 741. The supreme court concluded that, even though direct evidence concerning the "added" charges was not produced at the preliminary hearing, the state could add charges to an information as long as the additional counts were not "wholly unrelated to the transactions or facts considered or testified to" at the preliminary hearing. *Id.* at 457, 451 N.W.2d at 744. "The charges must be 'related in terms of parties

616

involved, witnesses involved, geographical proximity, time, physical evidence, motive and intent.' " *Id.* (quoting *Bailey v. State,* 65 Wis. 2d 331, 341, 222 N.W.2d 871, 877 (1974)).

Here, the state argues that the conspiracy count is related to the evidence presented at the preliminary hearing and also that both counts are related. The state first argues that the two counts involve the same parties—Neudorff and Rosenbaum. Second, there is temporal proximity between the two counts because the dates of the amended count, May through December 1988, fall within the time period when Rosenbaum's ·statement said he was acquainted with Neudorff, namely, October 1987 to April 20, 1989. The state also argues that both counts allege criminal activity related to cocaine and that the geographical proximity, evidence, motive and intent were related for both charges.

We stop here to state that the real issue is not whether the new charge is related to the transaction or facts considered at the preliminary hearing; rather, the issue is whether Neudorff received constitutional notice of the new charge such that he could prepare and defend against it. We observe that a charge may be undeniably related to the transaction or facts considered at the preliminary hearing and yet, if there is no adequate notice of that charge, the prosecution cannot be legally sustained.

Although the state's brief does not state as much, we are certain that the state would be in complete agreement 'with the above statement. We take the state's argument using *Burke* to mean that if a new charge is so related to the transaction and facts adduced at the preliminary hearing, then a defendant cannot be heard to say that he or she is surprised by the new charge since

617

the preparation for the new charge would be no different than the preparation for the old charge.

We disagree that the facts in this case are such that the new charge is so related to the preliminary hearing that a claim of surprise would be invalid. First, the added count is based on new information obtained fourteen months after the preliminary hearing and one month before trial. Thus, it is not information arising out of the preliminary examination as in *Burke*.

Second, although the prosecution's witness was the same for both counts, namely, Rosenbaum, the witnesses who Neudorff might need to produce relative to a conspiracy charge may very well be different than witnesses to be produced to defend against the possession charge.

Third, the time periods are not related. The original count alleged a time period from May to June. The conspiracy amendment alleged a completely different time period, from August to December. The state subsequently made a second motion to push back the starting date of the conspiracy from August 1 to May 1 and thus created an overlap in the time periods of the two counts. However, the conspiracy count still covered an eight-month period, whereas the possession count covered only a one-and-one-half-month period.[2]

Fourth, the cocaine itself was different in the two counts. Rosenbaum's original statement was that he saw Neudorff with a kilogram of cocaine that Neudorff brought from Florida. Rosenbaum's revised statement

[2]We also note that the conspiracy period alleged in Count I—June 1, 1987 to June 20, 1988—overlapped with the conspiracy period alleged in the amended Count II only during this one-and-one-half-month period. Therefore, there is also no basis for an argument that the amended Count II was related to the evidence presented at the preliminary hearing for Count I.

was that, after seeing Neudorff's cocaine, Rosenbaum also brought cocaine from Florida and supplied it to Neudorff. It was the alleged second batch of cocaine that formed the basis for the conspiracy charge. These differences indicate to us that while the state may be able to say that the new charge is not wholly unrelated to the transactions and facts of the preliminary examination, that does not mean that Neudorff was on notice to prepare for the new charge.

Where the state's argument falters is not in failing to satisfy the "wholly unrelated test," but in failing to satisfy the constitutional notice test. The criminal elements of possession of cocaine with intent to deliver and the elements of conspiracy to deliver cocaine are too different to permit an amendment from one to the other on the morning of trial without considering whether the timing of the amendment prejudices preparation of the defendant's case. It is timing that distinguishes this case from *Whitaker*, where the supreme court permitted an amendment changing a charge from theft to robbery. *Whitaker*, 83 Wis. 2d at 370–71, 374, 265 N.W.2d at 577. In *Whitaker*, there was an arraignment on the amended charge and the trial was adjourned for four months. Thus, the defendant could not argue that he had inadequate notice of the charge. The timing of the amendment in this case deprived Neudorff of his right to notice.

██ ██

Notice to the defendant of the nature and cause of the accusations is a key factor in determining whether an amended charging document has prejudiced a defendant. *State v. Wickstrom*, 118 Wis. 2d 339, 349, 348 N.W.2d 183, 189 (Ct. App. 1984). Until the morning of trial, Neudorff had no notice that he would have to defend against a conspiracy charge. The notice two days

earlier that Rosenbaum would testify to the very facts that formed the basis for the amended count does not constitute adequate notice, especially since Neudorff had no reason to believe that Rosenbaum's testimony would be used by the state to issue a new charge in the form of an amendment. Because of this lack of notice, Neudorff had no coherent theory of defense to present to the jury. As Neudorff notes in his reply brief, not only did this prejudice him, it also assaults the jury system by guaranteeing that only one party will be prepared to try the lawsuit.

The state relies on *State v. Stark,* 162 Wis. 2d 537, 548, 470 N.W.2d 317, 321 (Ct. App. 1991), to argue that Neudorff cannot claim prejudice on appeal because he has not articulated a defense theory to the amended charge or shown how his trial strategy would have been different if he had learned of the new charge before the morning of trial. The state claims that Neudorff should have procured exculpatory evidence between the time of trial and the time of the postconviction motion hearing, and the fact that he did not do so shows that he suffered no prejudice.

We conclude that *Stark* does not apply in this case. In *Stark,* we concluded that Stark's constitutional right to notice was violated when the state in opening argument narrowed the time frame of his charges from three-and-one-half months to thirteen days. *Id.* at 547–48, 470 N.W.2d at 321. This information was available to the state before the trial and notice to Stark of the narrowed time frame would have helped him prepare a more focused alibi defense. However, we held in Stark's case that this was harmless error. *Id.* at 548, 470 N.W.2d at 321. This is because Stark never produced any evidence that he had an alibi defense. *Id.*

■■ The difference between Stark's case and Neudorff's case is that alibi evidence does not raise reasonable doubt as a matter of law, *id.,* whereas the sole purpose of a defense theory is to raise reasonable doubt. It does not prejudice a defendant for us to request evidence of an alibi before we will reverse for a new trial because this simply imposes on the defendant the same disclosure that would have been required before the original trial. Section 971.23(8), Stats., requires a defendant to give the prosecution detailed notice of any alibi before trial. However, there is no similar statutory requirement that a defendant disclose other possible defense theories before trial. This is undoubtedly because of the defendant's presumption of innocence and the burden on the state to prove guilt beyond a reasonable doubt.

Since Neudorff's constitutional right to notice was violated by the state's amendment, he was prejudiced. Such prejudice cannot constitute harmless error because there is a reasonable possibility that the lack of notice contributed to Neudorff's conviction since it prevented him from preparing a defense to the expanded charge. Therefore, we reverse Neudorff's conviction and remand for a new trial.

Neudorff also contends that it was error for the trial court to deny his request to admit both the original and amended complaint into evidence. Because we are remanding for a new trial, we decline to address this issue.

*By the Court.*—Judgment and order reversed and cause remanded with directions.