STATE of Wisconsin, Plaintiff-Respondent,

v.

Davon R. MALCOM, Defendant-Appellant.

Court of Appeals

*No. 01–0506–CR. Submitted on briefs October 24, 2001.—
Decided November 28, 2001.*

2001 WI App 291

(Also reported in 638 N.W.2d 918.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John D. Lubarsky* assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Karla Z. Keckhaver*, assistant attorney general.

Before Nettesheim, P.J., Brown and Snyder, JJ.

¶ 1. NETTESHEIM, P.J.    Davon R. Malcom appeals from a judgment reciting two convictions: maintaining a drug trafficking residence and maintaining a bar resorted to by persons using controlled substances,

both in violation of Wɪs. Sᴛᴀᴛ. § 961.42(1) (1999–2000).[1] Malcom challenges his conviction on two grounds: (1) the trial court erroneously denied his request to introduce an affidavit of a housemate claiming full responsibility for the drug trafficking in his residence, and (2) the trial court erroneously permitted the State to amend the information at the close of the evidence to add the charge relating to the bar. We reject both of Malcom's arguments and affirm the judgment.

## BACKGROUND

¶ 2. The facts underlying Malcom's arrest are largely undisputed by the parties. On April 8, 1999, Officers Jennifer Jacobsen, Kurt Meyer and John Polzin of the City of Racine Police Department responded to a domestic abuse call at a residence which Malcom shared with his girlfriend, Mariam Johnson, her two children and his cousin, Rodney Christmas. An individual named Dexter Cole had also been living at the residence, sleeping on a couch in the basement. Johnson called the police after Malcom struck her during an argument. When the police arrived, Johnson informed Polzin that she and Malcom had been fighting because she believed Malcom had become involved in drug sales both at the residence and at his bar, Malcom's Bar. She also indicated that Malcom did not want her to call the police because the "dope is in the basement." According to Polzin, Johnson told him that after she yelled to her children to call the police, Malcom hurried

---

[1] Malcom was additionally convicted of battery pursuant to Wɪs. Sᴛᴀᴛ. § 940.19(1) (1999–2000). He does not challenge his conviction as to that offense. All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

to the basement of the residence. Malcom was no longer at the residence when the officers arrived.

¶ 3. After speaking to the police, Johnson consented to a search of the residence. Meyer and Polzin searched the basement area of the residence. At trial, Meyer testified that he discovered "some plastic sandwich type baggies with the corners removed," an instruction booklet for a digital scale, a box of unused sandwich baggies, a large mirror with "a white crystalline powder substance on it" and a straight razor blade. Polzin recovered a social security card and medical card issued to Cole inside a suitcase. He also recovered a postal scale, a birth certificate for Cole and a plastic baggie containing a substance he believed to be marijuana.

¶ 4. Officer Michael Ackley assisted in the search of the upstairs area of the residence. In his search of the bedroom shared by Malcom and Johnson, he discovered $1500 in cash, a box of sandwich bags, a bullet-proof vest and a Wisconsin driver's license issued to Malcom.

¶ 5. At some point during the investigation, Detective Bruce Larrabee and Investigator William Warmington of the City of Racine Police Department were called to Malcom's residence. Larrabee spoke with Johnson for approximately fifteen to twenty minutes. Johnson informed Larrabee that she believed Malcom had cocaine in the basement of the residence and that he might be dealing drugs from his bar. Based on the information provided by Johnson, Larrabee obtained a search warrant for Malcom's Bar. During the search of the bar, Larrabee discovered "plastic baggies that were torn and used" and torn-up cigar tobacco, consistent with use in making "blunts," a mixture of tobacco and controlled substances.

¶ 6. Officer Mark Sorenson, an investigator for the City of Racine Police Department, testified that Malcom informed him that "the paraphernalia [located in the bar] was probably left over from when he let his friends smoke marijuana in the basement from time to time."

¶ 7. Results from the analysis of the evidence indicated that Cole's fingerprints were on one of the six baggies analyzed and Malcom's fingerprints were on another one of the baggies.

¶ 8. On April 9, 1999, the State filed a complaint charging Malcom with battery contrary to WIS. STAT. § 940.19(1), and two counts of "maintain[ing] a drug traffic place-manufacture" contrary to WIS. STAT. § 961.42(1). The first count of maintaining a drug trafficking place alleged that Malcom kept his residence as a place to manufacture or deliver drugs. The second count alleged that Malcom kept his bar as a place to manufacture or deliver drugs.

¶ 9. On May 24, 1999, the State filed an information containing the exact same offenses charged in the criminal complaint. Malcom pleaded not guilty to the charges. The matter proceeded to a jury trial. At the close of evidence, the trial court permitted the State to amend the information to additionally allege that Malcom maintained his bar as a place resorted to by persons using controlled substances for the purpose of using those substances contrary to WIS. STAT. § 961.42(1). The jury found Malcom not guilty of maintaining his bar for purposes of drug trafficking. However, the jury found Malcom guilty of maintaining his residence for purposes of drug trafficking and of maintaining his bar as a place resorted to by persons

using controlled substances for purposes of using such substances. Malcom appeals from the ensuing judgment of conviction.

¶ 10. Malcom contends that the trial court made two erroneous rulings during the course of his trial. First, Malcom argues that the trial court erroneously exercised its discretion in denying his request to admit an affidavit of Cole, his housemate, claiming full responsibility for the evidence found in Malcom's residence. Second, Malcom contends that the trial court erroneously permitted the State to amend the information to add the alternative ground for violating Wis. Stat. § 961.42(1) relating to the bar. We will discuss the trial court's rulings and further facts as we discuss each of Malcom's arguments.

## DISCUSSION

### 1. The Exclusion of Cole's Affidavit

¶ 11. Prior to trial and again at the close of the State's case, Malcom made an offer of proof in support of his request for the admission of an affidavit made by Cole, the individual living in the basement of Malcom's residence, as a statement against interest pursuant to Wis. Stat. § 908.045(4). In the affidavit, Cole claims full responsibility for the items confiscated from the basement of the residence. Although the trial court found Cole to be an "unavailable witness" pursuant to Wis. Stat. § 908.04(1)(e), it denied Malcom's request on both occasions due to a lack of evidence corroborating Cole's statement. Malcom contends that the statement was sufficiently corroborated. Malcom additionally contends that the trial court's ruling denied him his constitutional rights to due process and to present a defense. *See Chambers v. Mississippi,* 410 U.S. 284, 302 (1973).

¶ 12. The admission of evidence lies within the sound discretion of the trial court. *State v. Keith*, 216 Wis. 2d 61, 68, 573 N.W.2d 888 (Ct. App. 1997). We will uphold a trial court's exercise of discretion if it logically interpreted the facts, applied the proper legal standard, and used a demonstrated rational process to reach a conclusion a reasonable judge could reach. *Id.* at 69. Whether the trial court applied the proper legal standard is a question of law which we review de novo. *Id.* Finally, the application of constitutional principles to a set of facts is a question of law which we review de novo. *Id.*

¶ 13. The trial court found that Cole was an unavailable witness. WISCONSIN STAT. § 908.045 governs exceptions to the hearsay rule when a witness is unavailable. Section 908.045(4) provides in relevant part:

> STATEMENT AGAINST INTEREST. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborated.

In deciding the admissibility of a statement against interest, the proper inquiry is not whether the judge believes the statement to be true "but rather whether there is sufficient corroboration for a reasonable person to conclude that it could be true." *State v. Anderson*, 141 Wis. 2d 653, 665–66, 416 N.W.2d 276 (1987).

¶ 14.  Malcom argues that "there was considerable evidence from which a reasonable person could conclude that Cole's affidavit *could* be true." Cole stated that he resided in the basement of Malcom's residence and that he left some plastic baggies in his backpack in the basement. He also claimed ownership of the plastic baggie containing plant residue, the scale and manual, mirror, razor and plastic baggies with torn corners.

¶ 15.  Malcom cites to the following evidence corroborating Cole's statement. First, both Johnson and Malcom's cousin, Christmas, confirmed that Cole slept in the basement of the residence and kept his personal belongings there. Polzin testified that he recovered a suitcase from the basement which contained Cole's social security card, medical card and birth certificate as well as a postal scale and a small amount of marijuana residue. Meyer testified that he recovered a lump of baggies with the corners missing from the couch on which Cole slept. And, finally, Cole's fingerprints were found on one of the plastic baggies recovered from the basement of Malcom's residence.

¶ 16.  Pursuant to *Anderson*, Malcom contends that he needed only to show that Cole's statement "could be true" and that the evidence presented was sufficient to do so. *See id.* at 660. However, the application of the *Anderson* standard was clarified in *State v. Johnson*, 181 Wis. 2d 470, 510 N.W.2d 811 (Ct. App. 1993). There, we observed that *Anderson* does not require the admission of an out-of-court statement that tends to expose the declarant to criminal liability when the corroboration is merely debatable. *Johnson*, 181 Wis. 2d at 483. "Rather, *Anderson* recognized that a statement against penal interest . . . must be excluded if the trial court, in the exercise of its discretion, con-

411

cludes that, consistent with Rule 901.04(2), no reasonable jury could find that the statement could be true." *Johnson*, 181 Wis. 2d at 483.

¶ 17. We have examined the record and conclude that the trial court properly exercised its discretion in excluding Cole's affidavit. While Malcom concedes "there may well have been sufficient evidence from which the jury could conclude that [Malcom] participated in drug activity in the basement of his home," he maintains that there was also a great deal of evidence to support Cole's statement taking full responsibility for the items seized from the basement of the residence. We disagree.

¶ 18. Despite Cole's acceptance of full responsibility for the criminal activities, substantial and unchallenged evidence also implicated Malcom. For instance, Johnson testified that when she threatened to call the police, Malcom told her not to do so because of the "dope" in the basement. Then, after Johnson called the police, Malcom ran down to the basement before leaving the residence. Finally, Malcom's fingerprints, like Cole's, were found on one of the plastic baggies recovered from the basement of his residence. In sum, the evidence before the trial court supported the conclusion that Malcom was involved in, if not fully responsible for, the drug-related activities in his residence. Thus, the corroboration of Cole's statement accepting *full responsibility* for the criminal activity was "merely debatable" under *Johnson*. In light of the other significant and unchallenged evidence implicating Malcom, no reasonable jury would accept Cole's affidavit. Thus, the trial court properly rejected the affidavit.

## 2. *The Amended Information*

■

¶ 19.   We turn next to Malcom's challenge to the trial court's decision to permit the State to amend its information at the close of evidence by submitting two different theories to the jury upon which it could convict Malcom of violating WIS. STAT. § 961.42(1) at his place of business.

¶ 20.   WISCONSIN STAT. § 961.42(1) of the Uniform Controlled Substances Act provides:

> It is unlawful for any person knowingly to keep or maintain any store, shop, warehouse, dwelling, building, vehicle, boat, aircraft or other structure or place, which is resorted to by persons using controlled substances in violation of this chapter for the purpose of using these substances, or which is used for manufacturing, keeping or delivering them in violation of this chapter.

¶ 21.   In the criminal complaint and ensuing information, the State alleged in Count 2, pertaining to Malcom's residence, and Count 3, pertaining to Malcom's Bar, that Malcom did "unlawfully, feloniously knowingly keep or maintain a store, shop, warehouse, dwelling . . . which is used for manufacturing, keeping or delivery them [sic] in violation of chapter 961." Although the information charged that Malcom's Bar was used to manufacture, keep or deliver controlled substances, the evidence established that the bar was also "resorted to by persons using controlled substances in violation of [ch. 961]"—a further method of violating WIS. STAT. § 961.42(1). Indeed, one of the investigators testified that Malcom had informed him that "the paraphernalia [located in the bar] was probably left

over from when he let his friends smoke marijuana in the basement from time to time."

¶ 22. Relying on this evidence, the State requested at the close of the evidence that the information be amended to add this alternative method for violating WIS. STAT. § 961.42(1) with respect to Malcom's Bar. The State argued that § 961.42 permitted the jury to find Malcom guilty if he used the bar to either manufacture and deliver controlled substances as charged in the information *or* as a place resorted to by persons using controlled substances as proposed in the added charge. The State indicated that if Malcom was convicted on both counts, it would seek but one conviction. Malcom objected to the amendment, arguing that it would be extremely prejudicial given that his defense strategy had not addressed the additional theory proposed by the State. The trial court granted the State's request. As noted, the jury acquitted Malcom of the original charge but found him guilty of the added charge.[2]

■■■■

¶ 23. WISCONSIN STAT. § 971.29(2) provides in relevant part, "At the trial, the court may allow amendment of the complaint, indictment or information to conform to the proof where such amendment is not prejudicial to the defendant." Whether to allow amendment of the information to conform to the proof is within the discretion of the trial court and will not be reversed absent an erroneous exercise of discretion. *State v. Frey*, 178 Wis. 2d 729, 734, 505 N.W.2d 786 (Ct.

[2] Our ensuing discussion of the issue presented in this case does not speak to whether Malcom could have been convicted and sentenced on both the original and amended counts. That issue is not presented and we do not address it.

App. 1993). Therefore, we will uphold the trial court's decision to allow an amendment if the record shows that discretion was exercised and a reasonable basis exists for the trial court's ruling. *Id.* However, the application of constitutional principles to the facts of the case is a question of law which we review de novo. *Keith*, 216 Wis. 2d at 69.

¶ 24.  Malcom argues that the State's amendment to the information changed the nature of the charge against him and deprived him of adequate notice of the charges and a fair opportunity to defend himself. Malcom contends that the elements of the two theories submitted to the jury were significantly different and the facts necessary to prove them are distinct and thus, the State's request should have been denied. In support of his argument, Malcom relies on our holding in *State v. Neudorff*, 170 Wis. 2d 608, 489 N.W.2d 689 (Ct. App. 1992).

¶ 25.  In *Neudorff*, we reversed a judgment of conviction because the State's amendment to the information on the morning of trial presented a new charge with new elements, thus depriving the defendant of sufficient notice to prepare a defense. *Id.* at 611. The amendment in that case changed the charge from possession of cocaine with intent to deliver to a charge of conspiracy to deliver. *Id.*

¶ 26.  In *Neudorff*, we observed that the State may add charges to an information as long as the additional counts are not wholly unrelated to the transactions or facts considered or testified to at the preliminary hearing. *Id.* at 616. However, "[t]he charges must be 'related in terms of parties involved, witnesses involved, geographical proximity, time, physical evidence, motive and intent.' " *Id.* at 616–17 (quoting *State v. Burke*, 153 Wis. 2d 445, 457, 451 N.W.2d 739 (1990)). We cautioned

that while a charge may be "undeniably related to the transaction or facts considered at the preliminary hearing . . . if there is no adequate notice of that charge, the prosecution cannot be legally sustained." *Neudorff*, 170 Wis. 2d at 617. Therefore, the State must satisfy two tests for an amendment to be sustained:   the "wholly unrelated test" and the "constitutional notice test." *Id.* at 619.

¶ 27.   In *Neudorff*, we held that the amendment was improper because (1) the added charge did not arise out of Neudorff's preliminary examination but was added fourteen months after the preliminary hearing and one month before trial; (2) in order to defend against a charge of conspiracy as opposed to possession, Neudorff might have needed to produce different witnesses; (3) the time periods of the original and amended charge were not related—the conspiracy count covered an eight-month period whereas the possession count covered a one and one-half-month period; and (4) the cocaine itself was different—the new charge concerned a separate batch of cocaine. *Id.* at 618–19. We further concluded that the timing of the amendment, on the morning of trial, deprived Neudorff of his right to notice. *Id.* at 619.

¶ 28.   Here, the only fact that aligns this case with *Neudorff* and that supports Malcom's argument is the time factor—the amendment came at the close of the evidence. However, in all other respects, the facts of his case differ significantly from those presented in *Neudorff*. Here, the added charge was covered by the very statute underlying the original charge, WIS. STAT. § 961.42. In addition, Malcom was not caught unaware of the facts underlying the added charge since his statement to the police largely supported the charge. Moreover, the evidence relied upon by the State in an

416

attempt to prove the original charge was the same evidence that supported the added charge. Both charges covered the same time period, the same witnesses, the same location, and the same physical evidence. Finally, the evidence does not show or suggest that Malcom would have presented different witnesses in defense of the amended charge.

¶ 29. We conclude that the facts of this case are more akin to those presented in *Frey*. There we held that Frey was not prejudiced by the trial court's decision to permit the State to amend the information from first-degree sexual assault (sexual contact) to first-degree sexual assault (sexual intercourse) during the defense phase of the evidence. *Frey*, 178 Wis. 2d at 734, 737. In upholding the trial court's discretionary decision, we noted that (1) the basis of the charge against Frey did not change, (2) the criminal complaint detailed the conduct that formed the basis of the original information and the amended information was based on exactly the same conduct, and (3) Frey's defense theory was not affected by the amendment. *Id.* at 736–37.

¶ 30. We similarly conclude that Malcom had notice of the nature and cause of the added charge and was not denied his constitutional right to defend himself by the State's amendment of the information. Again, our inquiry in this case is whether the new charge is "so related to the transaction and facts adduced at the preliminary hearing [that] a defendant cannot be heard to say that he or she is surprised by the new charge since the preparation for the new charge would be no different than the preparation for the old charge." *Neudorff*, 170 Wis. 2d at 617–18. We conclude that it was. We uphold the trial court's discretionary

417

decision to allow the amendment and to submit that additional theory to the jury.

## *CONCLUSION*

¶ 31. Because the statements contained in Cole's affidavit were merely debatable, we conclude that the trial court properly exercised its discretion in rejecting the affidavit as evidence. We further conclude that Malcom was not denied fair notice and the opportunity to defend himself by the amendment to the information after the close of evidence.

¶ 32. We affirm the judgment.