COURT OF APPEALS
DECISION
DATED AND FILED

March 31, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* **WIS. STAT. § 808.10 and RULE 809.62.**

**Appeal No.      2021AP151-CR**

Cir. Ct. No.  2018CF118

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT IV**

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

MARK A. SALGADO,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Jefferson County: WILLIAM F. HUE, Judge. *Affirmed.*

Before Fitzpatrick, Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.  Mark Salgado appeals a judgment of conviction, entered following a bench trial, for several crimes, including attempted first-degree

intentional homicide. Salgado argues that the attempted homicide conviction was based on the trial court's ignorance or misapplication of the statutory definition of "intent." *See* WIS. STAT. § 939.23(4) (2019-20).[1] Salgado further argues that the evidence was insufficient to demonstrate his intent to kill the victim. We reject his arguments and affirm.

## BACKGROUND

¶2    The following allegations are from the criminal complaint. In February 2020, Salgado was staying at a motel in Fort Atkinson. Salgado grabbed M.P., one of the proprietors of the motel, and pulled her into his room. Salgado pointed a knife at M.P., and the two struggled while Salgado tried to stab her. M.P. grabbed the knife and wounded her left hand. M.P. ran into the bathroom and locked the door; Salgado broke open the bathroom door. Other people forced open the door of Salgado's room, and M.P. escaped from the room. M.P. sustained a deep wound to her left hand and injuries to her face and head.

¶3    Salgado was charged with attempted first-degree intentional homicide, substantial battery, and kidnapping. *See* WIS. STAT. §§ 940.01(1)(a), 940.19(2), 940.31(1)(b). He pleaded not guilty[2] and waived his right to a jury trial. After a two-day bench trial, the court found Salgado guilty of all three charges. The court imposed a total sentence of twenty-one years and six months of initial

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] Salgado pleaded both not guilty and not guilty by reason of mental disease or defect. During trial, he withdrew the plea of not guilty by reason of mental disease or defect.

confinement and twenty-two years of extended supervision.[3] Salgado appeals. We will set forth additional facts below, where pertinent to our analysis.

## DISCUSSION

¶4 Salgado raises two arguments on appeal, both of which pertain only to his conviction for attempted first-degree intentional homicide and, specifically, the "intent" element of the homicide charge.[4] The crime of first-degree intentional homicide requires proof of two elements: causing death, with the intent to kill. WIS. STAT. § 940.01(1)(a); *State v. Anderson*, 2005 WI 54, ¶34, 280 Wis. 2d 104, 695 N.W.2d 731. "'With intent to' … means that the actor either has a purpose to do the thing or cause the result specified, or is aware that his or her conduct is practically certain to cause that result." WIS. STAT. § 939.23(4).

¶5 First, Salgado takes issue with certain statements the trial court made during its fact-finding, which, he contends, indicate that the court found him guilty without applying the proper legal standard for determining his intent to kill. Whether the record reflects that the trial court correctly applied the law is a question of law that we determine de novo. *State v. Malcom*, 2001 WI App 291, ¶12, 249 Wis. 2d 403, 638 N.W.2d 918.

---

[3] The court imposed consecutive sentences of fifteen years of initial confinement and fifteen years of extended supervision for the count of attempted first-degree intentional homicide; one year and six months of initial confinement and two years of extended supervision for the count of substantial battery, and five years of initial confinement and five years of extended supervision for the count of kidnapping.

[4] With an attempt, the State must prove that the defendant had "an intent to perform acts and attain a result which, if accomplished, would constitute such crime" and that the defendant "does such acts towards the commission of the crime which demonstrate unequivocally, under all the circumstances, that the [defendant] formed that intent and would commit the crime except for the intervention of another person or some other extraneous factor." WIS. STAT. § 939.32(3). Salgado does not argue that the "attempt" standard was not satisfied.

¶6      Second, Salgado argues that there was insufficient evidence that he intended to kill M.P.  We assess the sufficiency of the evidence under a highly deferential standard, affirming "unless the evidence, viewed most favorably to the state and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt."  *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990).

### I.  The Trial Court Did Not Ignore or Misapply the Standard for Criminal Intent

¶7      Salgado argues that the trial court ignored or did not correctly apply the statutory standard on intent.  In support of this position, he points to a statement that the trial court made during its fact-finding.  As background, the court had just found Salgado guilty of substantial battery.  As part of that fact-finding, the court discussed the meaning of "intent" as it related to that crime:

> Did [Salgado] intend to do this?  Yes, he intended to harm her at that time, and as a result of the Court finding, either that he had the mental purpose to actually do this or was aware that his conduct was practically certain to cause this bodily harm to the other human being, I'm satisfied beyond a reasonable doubt under those definitions that are set forth, so I find him guilty of substantial battery with intent to cause bodily harm.

¶8      Shortly after, the trial court turned to the charge of attempted first-degree intentional homicide.  The court began by discussing whether the circumstances just prior to Salgado's attacking M.P. with a knife might indicate his intent to kill.  The court noted that Salgado had kidnapped M.P., that he had blocked the door, and that there were "devices" in his room (gloves, rope, knives, and a drill) consistent with the intent to kill.  On the other hand, the court considered the possibility that Salgado may have had "many [other] reasons to have those devices

in there" (for example, to further a sexual assault or a kidnapping). The court therefore turned to the circumstances of the assault itself:

> So then I have to look at whether or not the brandishing of the knife towards [M.P.] was an act that—to a reasonable person—was likely to lead to the conclusion, which would be her death. And when you're stabbing at a person with a knife in her abdomen and at her heart. *Even if you're not intending to kill her, if you know that what you're doing likely is going to kill her, you would be guilty of this offense, and that's what I'm finding, so I'm going to find you guilty of the attempted first-degree homicide charge as well.*

(Emphasis added.)

¶9 Salgado identifies two errors relating to the sentence emphasized above. First, he argues that the trial court's statement "[e]ven if you're not intending to kill her," means that the trial court actually found that Salgado did not form the intent to kill. The record does not support this position. Taken in context, and given the use of the term "even if," this phrase does not indicate an ultimate finding of lack of intent. Rather, this statement represents the court's application of the statutory standard of intent that the court had just articulated when finding Salgado guilty of substantial battery: that, in the court's words, intent is either "the mental purpose to actually do this" or the "aware[ness] that his conduct was practically certain to cause this bodily harm to the other human being." Thus, the court was explaining that even if (hypothetically) Salgado did not act with a specific purpose to kill M.P., he nonetheless knew that his actions were practically certain to cause M.P.'s death.

¶10 Second, Salgado argues that the trial court did not understand and actually did not apply the proper statutory standard for intent: "that the actor either has a purpose to do the thing or cause the result specified, or is aware that his or her conduct is practically certain to cause that result." *See* WIS. STAT. § 939.23(4). To

5

support his argument, Salgado points to the trial court's statement, "[I]f you know that what you're doing *likely* is going to kill her, you would be guilty of this offense." (Emphasis added.) Salgado argues that the court's use of the phrase "likely," instead of "practically certain," means that the court did not, in fact, find that Salgado was aware that his conduct was practically certain to cause M.P.'s death. *See id.*

¶11     We disagree. In the context of a bench trial, there must plainly be leeway for the trial court to set forth its factual findings, even if it does so somewhat imprecisely. There is no indication in the record that the trial court was in fact unaware of the statutory definition of intent. To the contrary, mere minutes before, the court properly articulated the standard for intent in the context of finding Salgado guilty of substantial battery. Moreover, the court's discussion of the facts supporting a finding of intent make it clear that the court understood and applied the proper standard. Thus, based on this record, we cannot conclude that the trial court actually applied the wrong legal standard.[5]

*II. There is Sufficient Evidence that Salgado Intended to Kill M.P.*

¶12     Salgado next argues that "the evidence was insufficient to permit the inference that [he] ever actually formed the intent to kill." As stated, our review is deferential. "The test is not whether this court is convinced of the defendant's guilt, but whether we can conclude that the trier of fact could, acting reasonably, be so convinced by the evidence." ***State v. Lindgren***, 2004 WI App 159, ¶24, 275 Wis. 2d

---

[5] In the alternative, the State argues that if this court concludes that the trial court did not find intent or applied the wrong standard, we may nonetheless affirm the conviction because we are "not bound" by the trial court's reasoning or inferences but may "examine the record as a whole to determine if there are other facts and inferences that would support the verdict." Because we affirm on other grounds, we do not address this alternative argument.

851, 687 N.W.2d 60 (citing *Poellinger*, 153 Wis. 2d at 503-04). Thus, we defer to the fact-finder's determination of witness credibility and the weight of the evidence, and we view the evidence in the light most favorable to the factual findings. *Poellinger*, 153 Wis. 2d at 504.

¶13 In accordance with this standard, we set forth the facts most favorable to the verdict. M.P. testified as follows. She was the manager of the motel where Salgado was staying. M.P. responded to Salgado's request to go to his room to help him with his coffee maker. As she stood in the doorway of Salgado's room, she became concerned because a large table in the room "was not where it was supposed to be." She turned to leave, and Salgado "pulled" her by her hair and "snatched" her. M.P. screamed for help to a person walking in the hallway.

¶14 M.P. fell onto the floor of Salgado's room, and Salgado closed the door. M.P. was lying on her back; Salgado "had [her] hand" and "had a knife in his other hand." Salgado "tried to hit [M.P.] with the knife" by pushing or placing the knife "very, very close to [her] chest area." M.P. "grabbed the knife" with her hand and pushed him away with her feet. M.P. grabbed the knife because she "thought that [Salgado] was going to hit [her] with the knife"; however, she was unable to take the knife away from Salgado. Salgado, meanwhile, "was hitting [M.P.] with his other hand on [her] forehead and … close to [her] nose, the front area, left side, basically the whole thing." During this time, people gathered outside Salgado's door, and M.P. shouted to the people to call the police. M.P. was able to push Salgado away, and she went into his bathroom and closed the door. M.P. noticed that her hand was bleeding and that she was in severe pain.

¶15 M.P. heard Salgado push a table in front of the main door to his room. M.P. tried to lock the bathroom door, but Salgado "push[ed] on th[at] door," "hitting

the door really, really hard." Salgado opened the bathroom door because the lock was broken. Salgado "pulled" M.P. out of the bathroom, "pulled [her] down" to the floor, and "tried to hit [her] with the knife." M.P. observed that the table was blocking the main door. Somebody from the outside of the room broke open the main door. M.P. left Salgado's room.

¶16 Based on this testimony and corroborating evidence (such as Salgado's possession of gloves, rope, and a drill), the trial court determined that Salgado intended to kill M.P. On appeal, Salgado highlights his own testimony undermining or contradicting the above description of events, along with his own testimony that he did not want to kill M.P. It is not the purview of this court, however, to determine witness credibility or reweigh the evidence. *See id.* Along similar lines, Salgado argues that M.P.'s description of events was unclear or "inscrutable." Again, it was the trial court's role to weigh all the evidence; on this record, we cannot say that M.P.'s testimony, viewed in the light most favorable to the verdict, was insufficient to demonstrate intent. *See id.*

¶17 Finally, Salgado implies that the evidence was insufficient because "there was no direct evidence that [he] ever actually formed the intent to kill." But a conviction may be based entirely on circumstantial evidence, so this statement is beside the point, and this argument meritless. *See id.* at 501-02. We affirm the judgment of conviction.[6]

---

[6] Salgado argues that, if this court determines that the evidence was insufficient on the offense of attempted first-degree intentional homicide, we should remand with instructions to enter judgment on the lesser-included offense of second-degree recklessly causing injury. We do not address this argument because we conclude that the evidence was sufficient to sustain the greater offense.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.