# COURT OF APPEALS
# DECISION
# DATED AND FILED

## December 15, 2022

**Sheila T. Reiff**
**Clerk of Court of Appeals**

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2021AP1170-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2018CF334

**IN COURT OF APPEALS**
**DISTRICT IV**

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

 V.

ALAN M. HOFFMANN,

  DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Portage County: THOMAS B. EAGON, Judge. *Affirmed*.

Before Blanchard, P.J., Kloppenburg, and Fitzpatrick, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Alan Hoffman appeals a judgment of conviction for multiple counts of child sexual assault and incest committed against his daughters A.B. and C.D.[1] Hoffman argues that the circuit court erred by: (1) denying Hoffman's motion for a mistrial after a juror observed Hoffman being escorted by two sheriff's deputies outside the courtroom; (2) admitting A.B.'s videotaped interview into evidence under WIS. STAT. § 908.08 (2019-20);[2] (3) admitting only part of C.D.'s videotaped interview into evidence in violation of the rule of completeness; and (4) allowing the prosecutor to cross-examine two defense witnesses with evidence of A.B.'s allegations that was needlessly cumulative and unfairly prejudicial. Hoffman also argues that we should reverse for a new trial in the interest of justice. We reject each of Hoffman's arguments, and, therefore, affirm.

## 1. Motion for Mistrial

¶2 We turn first to Hoffman's argument that the circuit court erred in denying his motion for a mistrial. The relevant facts are not in dispute. During a break in the trial, one of the jurors observed Hoffmann being escorted by two sheriff's deputies outside the courtroom. Hoffmann was wearing street clothes and not shackled. The two deputies were in close proximity to Hoffman, with one positioned in front of him and the other positioned behind him.

---

[1] To protect the identity of the victims, we refer to them as "A.B." and "C.D." *See* WIS. STAT. RULES 809.19(1)(g) and 809.86.

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶3 Hoffman moved for a mistrial based on these circumstances, arguing that any curative measures short of a mistrial would be insufficient to protect the presumption of innocence.[3] The circuit court denied the motion, concluding that the circumstances of the juror's encounter with Hoffman were not sufficiently prejudicial to warrant a mistrial. The court instead opted to question the juror in chambers with Hoffman and counsel present. The juror stated that he "totally agree[d]" that the encounter should have no impact on his verdict, and that he understood that a defendant is presumed innocent. The juror also stated that he could "absolutely" put the encounter out of his mind and focus on the evidence presented in court. He also stated that he would not discuss the encounter with the other jurors.

¶4 "The decision whether to grant a mistrial lies within the sound discretion of the trial court." *State v. Sigarroa*, 2004 WI App 16, ¶24, 269 Wis. 2d 234, 674 N.W.2d 894. "The trial court must determine, in light of the whole proceeding, whether the claimed error was sufficiently prejudicial to warrant a new trial." *Id.* "[N]ot all errors warrant a mistrial and 'the law prefers less drastic alternatives, if available and practical.'" *State v. Givens*, 217 Wis. 2d 180, 191, 580 N.W.2d 340 (Ct. App. 1998) (quoted source omitted).

¶5 In arguing that the circuit court erred in denying his motion for a mistrial, Hoffman relies on case law supporting the proposition that there is inherent prejudice when jurors see a defendant in shackles. Hoffman acknowledges that he was not visibly shackled when the juror observed him

---

[3] There was no alternate juror to replace the juror who had observed Hoffman outside the courtroom.

3

outside the courtroom. He argues, however, that it would have been apparent to the juror that he was in custody.

¶6      The State contends that questioning the juror was a reasonable and less drastic alternative under the circumstances. It further argues that the circuit court's approach is supported by *State v. Cassel*, 48 Wis. 2d 619, 180 N.W.2d 607 (1970).

¶7      We agree with the State and conclude that questioning the juror was a reasonable and less drastic alternative under the circumstances. As noted above, Hoffman was in street clothes and not visibly shackled, and the juror agreed that he could set aside his observations and that he would not discuss the matter with other jurors. Given the juror's responses to the court's questions, it was reasonable for the circuit court to proceed with the trial.

¶8      We also agree with the State that the circuit court's approach is supported by *Cassel*. In *Cassel*, multiple jurors observed the defendant in restraints outside the courtroom but, upon being polled, they stated that their verdict was not influenced by the encounter. *Id.* at 623-25. Our supreme court concluded in *Cassel* that, under those circumstances, the circuit court was not required to find prejudice as a matter of law. *Id.* at 625. The supreme court stated in *Cassel* that "when a jury or members thereof see an accused outside the courtroom in chains or handcuffs the situation is psychologically different and less likely to create prejudice in the minds of the jurors" than if the jurors had seen the defendant restrained inside the courtroom. *Id.* Here, the circumstances are even less likely to have created prejudice than those in *Cassel* because Hoffman was not visibly shackled.

¶9    Hoffman argues that *Cassel* does not stand for the proposition that a juror's out-of-court observation of a defendant can never be so prejudicial as to warrant a mistrial. We agree, but we disagree with Hoffman if he is suggesting that the circuit court here interpreted *Cassel* as standing for such a hard and fast rule. Rather, we are satisfied that the court made an individualized determination, based on all of the circumstances, that a mistrial was not warranted.[4]

### 2. A.B.'s Videotaped Interview

¶10    Hoffman next argues that the circuit court erred by admitting A.B.'s videotaped interview into evidence. A.B. was five years old at the time of the interview and had been living with Hoffman, Hoffman's mother (A.B.'s grandmother), and C.D. During the interview, A.B. made detailed allegations describing how Hoffman had sexually assaulted her in her grandmother's home.

¶11    Hoffman contends that A.B.'s interview did not satisfy one of the statutory requirements for admissibility under WIS. STAT. § 908.08. The requirement is that a child's recorded statement be "made upon oath or affirmation or, if the child's developmental level is inappropriate for the administration of an oath or affirmation in the usual form, upon the child's understanding that false

---

[4] The State appears to suggest that Hoffman might have withdrawn his motion for a mistrial in favor of the approach of questioning the juror. The record cited by the State refutes this suggestion. It is true that Hoffman's counsel eventually agreed that the "most prudent" approach was for the court to question the juror. However, counsel made that statement *after* the circuit court had ruled that it was denying Hoffman's motion for a mistrial and had returned to an earlier discussion about possible curative measures. During that earlier discussion, counsel clearly stated her position that no curative measure would be sufficient. In context, the only reasonable reading of counsel's "most prudent" approach statement is that counsel was stating her backup position once it was clear that the court had denied her motion for a mistrial.

statements are punishable and of the importance of telling the truth." Sec. 908.08(3)(c).

¶12    There is no dispute that A.B.'s interview was not "made upon oath or affirmation." *See id.* Thus, the focus here is on whether the interview was "made … upon [A.B.]'s understanding that false statements are punishable and of the importance of telling the truth." *See id.*

¶13    Prior to trial, the circuit court reviewed the transcript of A.B.'s interview and, based on its review of the transcript, concluded that A.B.'s answers to the interviewer's question established that A.B. understood that false statements are punishable and the importance of telling the truth.

¶14    The parties disagree on our standard of review for this issue. Hoffman argues that we review de novo whether a child's videotaped interview satisfies the statutory requirements for admissibility. The State argues, in contrast, that the question of whether a child sufficiently understands the difference between the truth and a lie is an issue of fact for the circuit court.

¶15    We conclude that we would affirm the circuit court's decision to admit A.B.'s videotaped interview under either standard of review. We agree with the circuit court that A.B.'s answers to the interviewer's questions, taken as a whole, established that A.B. understood that false statements are punishable and the importance of telling the truth.

¶16    To be sure, in an early part of her interview, A.B. made several statements that, when viewed in isolation, indicated that she was unable or unwilling to tell the truth. Most notably, in an early part of the interview, when A.B. was asked if she knew the difference between the truth and a lie, she

responded "No." She also stated "I don't know how to tell the truth" and that it was "too hard" to tell the truth.

¶17 However, when provided with concrete examples, A.B. demonstrated that she in fact knew the difference between a truth and a lie. The interview included the following exchange:

> Q     …. So if I said that there was a little boy at school and he took a marker from the teacher's desk, and the teacher said: Did you take that marker from my desk, and he said, no, I didn't, is he telling a truth or telling a lie?
>
> A     Telling a lie.
>
> Q     Tell me how you know that he is telling a lie?
>
> A     Because he touched the marker.
>
> Q     Because he touched the marker. And what if that same little boy went home and he took a cookie from the cookie jar, and his mom said, did you take that cookie from the cookie jar? And he said, yes, I did, is he telling a truth or telling a lie?
>
> A     Telling the truth.

Further, other portions of A.B.'s interview demonstrated that A.B. understood that false statements are punishable and the importance of telling the truth. When the interviewer asked A.B. directly, "What happens if kids don't tell the truth," A.B. responded, "You get in trouble." When the interviewer asked A.B. directly if it was important to tell the truth, A.B. responded "Yeah."

¶18 As A.B.'s interview progressed, it became reasonably clear that A.B. possessed the requisite understandings required by WIS. STAT. § 908.08(3)(c), but that she had been highly reluctant to tell the truth about any assaults by Hoffman because she perceived that Hoffman and her grandmother did not want her to tell the truth about such assaults and because she feared that her grandmother would

punish her if she did. On these latter points, A.B.'s interview included the following relevant exchange, among others:

Q    Okay. So tell me about Poppy [Hoffman]. What are some things you like about Poppy?

A    Well, Poppy is in jail now … and he says that we will have fun …, but it didn't happen.

Q    Tell me why it didn't happen.

A    Because he did bad things.

….

Q    Tell me about the bad things.

A    I can't.

Q    Tell me why you can't tell me about the bad things.

A    Because my grandma won't let me.

….

Q    Tell me about why Grandma doesn't want you to tell.

A    Because I will get in trouble.

Q    Who will get in trouble?

A    Me.

Q    You will get in trouble?

A    Uh-hum, (Nods head.)

Q    Tell me, what kind of trouble will you get in?

A    Really big, big in trouble.

¶19    Hoffman argues that the assertion that A.B. feared being punished by her grandmother for telling the truth is incompatible with a conclusion that A.B. understood that false statements are punishable. We disagree. A child may fear punishment by a specific adult for telling the truth about specific matters

while at the same time understanding the general concept that "false statements are punishable." *See* WIS. STAT. § 908.08(3)(c). We see nothing about A.B.'s interview that would show that A.B.'s fear of punishment by her grandmother for telling the truth about Hoffman caused A.B. to lack a general understanding that false statements are punishable.

¶20　In sum, A.B.'s interview as a whole established that A.B. understood that false statements are punishable and the importance of telling the truth. Accordingly, we reject Hoffman's argument that the circuit court erred in admitting the interview under WIS. STAT. § 908.08.

### 3. C.D.'s Videotaped Interview

¶21　We turn next to Hoffman's argument pertaining to C.D.'s videotaped interview. Like A.B., C.D. made sexual assault allegations against Hoffman in her interview. The portion of the interview containing those allegations was played for the jury, but the jury did not hear other portions of the interview in which C.D.: (1) inconsistently denied that she was assaulted by Hoffman; and (2) asserted that A.B. was lying about being assaulted by Hoffman.

¶22　Hoffman argues that the circuit court erred by admitting only part of C.D.'s interview in violation of the rule of completeness. On this issue, the parties agree that we review the court's ruling for an erroneous exercise of discretion.

¶23　As codified in WIS. STAT. § 901.07, the rule of completeness provides as follows: "When any part of a writing or statement, whether recorded or unrecorded, is introduced by a party, an adverse party may require the party at that time to introduce any other part or any other writing or statement which ought

9

in fairness to be considered contemporaneously with it to provide context or prevent distortion." Sec. 901.07.

¶24 "The critical consideration in rule of completeness cases is whether the part of the statement offered into evidence creates an unfair and misleading impression without the remaining statements." *State v. Eugenio*, 219 Wis. 2d 391, 411, 579 N.W.2d 642 (1998). "The rule of completeness, however, should not be viewed as an unbridled opportunity to open the door to otherwise inadmissible evidence." *Id.* at 412. "Under the rule of completeness the court has discretion to admit only those statements which are necessary to provide context and prevent distortion." *Id.* "The circuit court must closely scrutinize the proffered additional statements to avert abuse of the rule." *Id.*

¶25 Here, as we understand it, Hoffman's argument under the rule of completeness has two components. We discuss each in turn.

¶26 Hoffman first argues that the rule of completeness required the circuit court to admit C.D.'s entire interview because excluding the portions of C.D.'s interview in which she denied being assaulted by Hoffman left the jury with a misleading and distorted view of the evidence. However, Hoffman did not raise this argument in the circuit court, at least not in any readily discernable manner. Rather, when Hoffman sought to admit C.D.'s entire interview, he cited portions of the interview in which C.D. asserted that A.B. was lying. The circuit court thus understandably focused on those parts of C.D.'s interview in discussing the rule of completeness. For these reasons, we decline to address Hoffman's argument based on the portions of the interview in which C.D. denied that she was assaulted. *See State v. Prineas*, 2009 WI App 28, ¶10, 316 Wis. 2d 414, 766 N.W.2d 206 ("To preserve the right to appeal on admissibility of evidence, a

litigant must inform the circuit court of the specific grounds for the objection."); *State v. Neudorff*, 170 Wis. 2d 608, 616, 489 N.W.2d 689 (Ct. App. 1992) ("The keystone of any [forfeiture] argument is whether a party has registered an objection with sufficient prominence such that the court understands what it is asked to rule upon."); *see also* *State v. Rogers*, 196 Wis. 2d 817, 827, 539 N.W.2d 897 (Ct. App. 1995) (stating that the court of appeals will not "blindside trial courts with reversals based on theories which did not originate in their forum.").

¶27     The second component of Hoffman's rule of completeness argument, by contrast, is preserved, and it pertains to the portions of C.D.'s interview in which she asserted that A.B. was lying.  Specifically, C.D. asserted that A.B. "copies" her, that A.B. "lies," and that A.B. lied about being assaulted by Hoffman.  Hoffman argues that the circuit court erred in excluding these portions of C.D.'s interview because they were critical to support his claim that A.B. lied about the assaults and had a motive to lie.  He argues that, without these portions of the interview, the evidence was again distorted and the jury again misled.  The State counters that the court properly excluded these portions of C.D.'s interview because C.D. lacked personal knowledge of whether Hoffman assaulted A.B. and because a witness may not render an opinion on whether another witness is telling the truth.

¶28     We agree with the State that the circuit court reasonably exercised its discretion to exclude the portions of C.D.'s interview in which C.D. asserted that A.B. was lying and that the rule of completeness does not require a different result.  As a general rule, "[n]o witness, expert or otherwise, should be permitted to give an opinion that another mentally and physically competent witness is telling the truth."  *State v. Haseltine*, 120 Wis. 2d 92, 96, 352 N.W.2d 673 (Ct. App. 1984).  Here, it was reasonable for the court to conclude that the jury

should not hear the portions of C.D.'s interview in which C.D. was commenting on A.B.'s truthfulness or credibility. Admitting those parts of C.D.'s interview would not have cured any distortion and could have instead invited the jury to improperly rely on C.D.'s opinion of A.B.'s credibility.

### 4. Cross-examinations of Defense Witnesses

¶29    Hoffman next argues that the circuit court erred by allowing the prosecutor to cross-examine two defense witnesses with evidence of A.B.'s allegations. Hoffman contends that this was error because one of the witnesses was the social worker who conducted A.B.'s videotaped interview, and that on cross-examination the prosecutor read extensively from the transcript of the interview. Hoffman further contends that there was error because the other witness was a doctor who offered an opinion as to potentially innocent explanations for medical findings from A.B.'s SANE exam, and that on cross-examination the prosecutor read details of A.B.'s assault allegations as recounted in the SANE report, A.B.'s therapy notes, and a police report.

¶30    Hoffman argues that the prosecutor's cross-examinations of these two defense witnesses with A.B.'s allegations involved unnecessary presentations of cumulative evidence that the jury had already heard in other forms seven times. He argues that the probative value of the evidence was diminished each time it was repeated and that the "[t]he balance of fairness was tipped into prejudice" by the prosecutor's use of A.B.'s allegations during his cross-examination of the defense witnesses.

¶31    The State counters that the circuit court properly exercised its discretion because the court had a reasonable basis for permitting the prosecutor's approach to cross-examinations of these witnesses. We agree with the State.

¶32   Circuit courts have broad discretion to control the order and presentation of evidence at trial. *State v. James*, 2005 WI App 188, ¶8, 285 Wis. 2d 783, 703 N.W.2d 727. Likewise, circuit courts have broad discretion under WIS. STAT. § 904.03 to determine whether the probative value of evidence is or is not outweighed by the risk of unfair prejudice. *Nowatske v. Osterloh*, 201 Wis. 2d 497, 503, 549 N.W.2d 256 (Ct. App. 1996). Here, we are satisfied that the circuit court could reasonably conclude that the prosecutor's approach to cross-examinations of the social worker and the doctor were proper.

¶33   As to the social worker, the prosecutor used excerpts from A.B.'s interview to bolster the interview's credibility and reliability after Hoffman's counsel had challenged the social worker's interview methods and the interview's overall reliability and credibility. Notably, Hoffman's counsel also read excerpts from the interview to the social worker during her testimony. As to the doctor, the prosecutor used details of A.B.'s allegations to challenge the weight and credibility of the doctor's opinion that there were innocent explanations for injuries to A.B.'s anus, in particular by demonstrating that the doctor was unaware of those details. In these circumstances, the circuit court could reasonably conclude that the prosecutor's repetition of A.B.'s allegations for purposes of the cross-examinations was probative and was not outweighed by the risk of unfair prejudice to Hoffman.

### *5. Reversal in the Interest of Justice*

¶34   Finally, we turn to Hoffman's argument that we should reverse in the interest of justice using our discretionary authority under WIS. STAT.

13

§ 752.35.[5]  Hoffman argues that the cumulative errors at trial misled the jury and prevented the real controversy from being fully tried.  However, we have now rejected Hoffman's claims of error, and as a consequence we are not persuaded that reversal in the interest of justice is warranted based on cumulative errors. Therefore, we affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[5]  WISCONSIN STAT. § 752.35 provides:

> In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.