# COURT OF APPEALS
## DECISION
## DATED AND FILED

## February 3, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP364-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF128

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

STEVEN A. PETERSON,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Clark County: NICHOLAS J. BRAZEAU, JR., Judge. *Affirmed*.

Before Kloppenburg, Fitzpatrick, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Steven Peterson was convicted after a jury trial on four counts:  (1) intimidation of a victim; (2) battery; (3) disorderly conduct; and (4) strangulation and suffocation.  Peterson appeals his conviction on counts one and four only, and also appeals the circuit court's order denying postconviction relief as to those counts.  Peterson raises five issues:  (1) whether there was insufficient evidence of guilt with respect to count one; (2) whether the circuit court erred in amending count one after the close of evidence at trial; (3) whether Peterson was denied his right to effective assistance of counsel with respect to count one when his trial counsel failed to object to the State's "misleading" closing argument and an inaccurate jury instruction; (4) whether the circuit court erred by granting the State's motion to amend count four on the morning of trial; and (5) whether Peterson was denied his right to effective assistance of counsel with respect to count four when his trial counsel failed to impeach the victim with prior statements and advocate for the jury's request to have testimony read back.

¶2     We affirm as to all issues.

## BACKGROUND

¶3     This case arose after Peterson physically attacked his wife, J., in their home while their son, L., was present.[1]  The criminal complaint charged Peterson with three counts:  (1) felony intimidation of a witness; (2) battery; and (3) disorderly conduct.  J. was the alleged victim for each count.  The State

---

[1] We use initials to refer to Peterson's wife as a victim of the charged crimes, and to her son and, below, the other minor witness, as provided in WIS. STAT. RULE 809.86 (2019-20).

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

subsequently filed an information that added a fourth count which charged Peterson with attempted strangulation and suffocation of J.

¶4      The jury trial took place in December 2017.  On the morning of trial, the circuit court granted a motion by the State to amend count four, attempted strangulation and suffocation, to strangulation and suffocation, without the "attempt" qualifier.  At the close of evidence at trial, the circuit court additionally granted the State's motion to amend count one from intimidation of a witness to intimidation of a victim.

¶5      The jury returned guilty verdicts on all four counts.

¶6      Peterson filed a postconviction motion raising three issues:  (1) the State's evidence was insufficient to support a conviction on count one; (2) Peterson was denied his right to effective assistance of counsel on count one; and, (3) Peterson was denied his right to effective assistance of counsel on count four.[2]

¶7      The circuit court entered a decision and order in February 2020, denying Peterson's first claim, regarding sufficiency of the evidence on count one.[3]  The court held a *Machner* hearing on Peterson's ineffective assistance of

---

[2] Peterson did not raise his objections to the court's amendments of counts one and four in his postconviction motion because those issues were preserved by contemporaneous objection.

[3] Peterson filed a motion to reconsider the decision to deny his sufficiency of the evidence claim, which the circuit court summarily denied in June 2020.

counsel claims and, in February 2021, entered a written decision and order denying those claims.[4]

¶8     This appeal follows.

## DISCUSSION

¶9     As stated, Peterson raises five issues on appeal: (1) whether there was insufficient evidence of guilt with respect to count one; (2) whether the circuit court erred in amending count one after the close of evidence at trial; (3) whether Peterson was denied his right to effective assistance of counsel with respect to count one by failing to object to the State's "misleading" closing argument and an inaccurate jury instruction; (4) whether the circuit court erred by granting the State's motion to amend count four on the morning of trial; and (5) whether Peterson was denied his right to effective assistance of counsel with respect to count four when counsel failed to impeach the victim with prior statements and failed to advocate for the jury's request to have testimony read back.

¶10     We address each issue in turn below.

### I. Insufficient Evidence of Guilt With Respect To Count One

¶11     Peterson argues that there was insufficient evidence to support his conviction on count one, felony intimidation of a victim.

---

[4] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979) (setting forth requirement for an evidentiary hearing to permit trial counsel to explain alleged errors).

¶12 We first state the applicable law and standard of review and next provide additional background. We then explain why we conclude that there was sufficient evidence of guilt with respect to count one and reject Peterson's arguments to the contrary.

### A. Applicable Law and Standard of Review

¶13 Count one charged Peterson with felony intimidation of a victim "[w]here the act is accompanied by any express or implied threat of force, violence, injury or damage." WIS. STAT. §§ 940.44(1); 940.45(3). A person violates these statutes when he or she "knowingly and maliciously prevents or dissuades, or [] attempts to so prevent or dissuade, another person who has been the victim of any crime … from … [m]aking any report of the victimization," WIS. STAT. § 940.44(1) (intimidation of victims; misdemeanor base offense), "[w]here the act is accompanied by any express or implied threat of force, violence, injury or damage described in sub. (1) or (2)," § 940.45(3) (felony circumstances).

¶14 Whether the jury had sufficient evidence to convict Peterson of count one, felony intimidation of a victim, is a question of law that we review de novo. *State v. Cavallari*, 214 Wis. 2d 42, 47, 571 N.W.2d 176 (Ct. App. 1997). The contours of our review are well established:

> [I]n reviewing the sufficiency of the evidence to support a conviction, an appellate court may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it.

5

*State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990) (citation omitted).

## B. Additional Background

¶15 The State presented four witnesses at trial: L.; L.'s friend, C.; C.'s father, who is a detective in the Clark County Sheriff's Department; and J.

¶16 L. testified as follows. On the night of the incident, L. was in his room and playing video games on Xbox with his friend C., who was playing from C.'s home but talking to L. through headsets. J. was down the hall in the kitchen. While L. was in his room, Peterson "came down the hallway yelling because he heard a ding on [J.]'s phone" and discovered that J. had deleted a text message before he could read it. Peterson swore at J., hit her with his hand and a belt, and choked her. J. "was gasping for air" and L. had the impression that J. was having trouble breathing so L. "put [Peterson] in a choke hold" to get him to stop. Peterson also "pulled a knife" on J. J.'s sister called J. during the incident and said she was going to call the police, at which point Peterson told both J. and L. to go to bed, turned off all the lights, and shut the curtains. After all the lights were turned off and the curtains were shut, Peterson "kept pacing in [L.'s] room, and he kept looking out the window." The window in L.'s room faced the driveway that led toward the road. Peterson "got in [L.'s] face and he told [L.], if you ever tell anybody, I'm going to give you a slow, painful death."

¶17 L. would "often" talk about incidents between Peterson and J. to his friend C., who, on the night of this latest incident and in the past, had been talking to L. through Xbox headsets during incidents between Peterson and J.

¶18    C. testified that on the night in question, C. and L. were on Xbox together when C. heard "a lot of screaming" through the headset, including Peterson telling J. that he will "[expletive] kill her." C. told his father, a detective in the Clark County Sheriff's Department, about the incident.

¶19    The detective testified that when C. told him about the incident at issue, he relayed the information to others within the Sheriff's department, which commenced the investigation that resulted in the charges filed in this case.

¶20    J. testified as follows. On the day of the incident at issue, J. received a text from her niece, which she read, responded to, and then deleted. Peterson heard the notification from the text message and "became very angry." He started "coming at" J. and "started hitting [her] with a belt." J. was down on her hands and knees when Peterson started hitting her with a wound-up rope and put his hands around her throat. J. then saw her son's legs approach and Peterson's hands came off of her neck. Around this time, J.'s niece and sister each called but Peterson would not let either of them talk to J. J.'s sister then threatened to call the police. "The next thing [J.] remember[ed]," was "just laying in bed."

¶21    J. also testified about five prior incidents between her and Peterson: an incident when Peterson choked her until she "went black" and Peterson had to revive her; Peterson hitting and choking J. after seeing an unknown caller on J.'s phone; Peterson hitting her on both sides of the head causing ringing in her ears; Peterson becoming angry that he had not been invited to J.'s older son's wedding and then putting his hands around J.'s throat, only releasing her when they were falling off the bed onto the floor; and, lastly, another incident a few days before the incident at issue, when Peterson had his hands around her throat and held her against the wall. J. also testified that the weekend before Peterson got arrested for

7

this incident, while they were lying in bed together, Peterson stated that "if I had a gun, I would take you and me out."

¶22    J. did not report any of the incidents to the police. Regarding the present case, J. testified that she declined to talk to the police about it and told C.'s father that she was "fine" and denied that she was strangled. She said that despite the fact that Peterson was in custody when she was asked about the incident, she denied anything happened "[b]ecause [she] did not want to deal with it when [Peterson] got home," and that she "would be in the house alone with him and [she] could honestly tell him that [she] didn't say nothing."

¶23    On cross-examination, J. testified that she did not see a knife and that she did not recall whether she was able to breathe. She also testified that she could not have called the police on her own the night of the incident because Peterson had her cell phone and she did not get it back that night. J. did have her phone the next day when she went shopping with L.

¶24    Peterson filed a postconviction motion in which he argued that "there was no evidence presented to support the State's claim that Peterson attempted to prevent or dissuade [J.] from reporting the battery or strangulation to law enforcement, or that while he attempted to prevent or dissuade her, Peterson threatened to use force or violence, or to injure or damage property."

¶25    The circuit court denied Peterson's postconviction motion, stating:

> [I]t certainly appears that when Mr. Peterson believed the police may be on their way to his house (after the victim's sister said she was going to call the police about this incident), Mr. Peterson shuts off the lights, shuts the curtains, and tells the parties to go to bed. This court finds that the jury could certainly find that to be an attempt to prevent or dissuade [J.] from reporting the crime to law

enforcement if the jury believed Mr. Peterson thought police were coming to his residence, which is a reasonable assumption based on the victim's sister threatening to call police.

It goes hand in hand with the above explanation that if the jury believed that by closing up and darkening the house and ordering the parties to bed, Mr. Peterson was attempting to prevent/dissuade [J.] from reporting to law enforcement, it would make sense that he was acting knowingly and maliciously, that is with the intent to prevent communication with the police. When taken in the light most favorable to the State and the conviction, it is reasonable that the jury could find that element beyond a reasonable doubt.

## C. Analysis

¶26    The elements of felony intimidation of a victim are set forth in WIS JI—CRIMINAL 1296: (1) J. was a victim of a crime; (2) Peterson did or attempted to prevent or dissuade J. from reporting the crime to a law enforcement agency; (3) Peterson acted knowingly and maliciously; and (4) the act was accompanied by any express or implied threat of force, violence, injury or damage. *See also* WIS. STAT. §§ 940.44 and 940.45(3).

¶27    Peterson focuses on elements two, three, and four, arguing that "the State failed to prove that Mr. Peterson knowingly and maliciously attempted to prevent or dissuade [J.] from reporting to law enforcement … or that while he attempted to prevent or dissuade, he threatened force or violence, or injury to property."

¶28    To repeat, the second and third elements are that Peterson did or attempted to prevent or dissuade J. from reporting the crime to a law enforcement agency, and did so knowingly and maliciously. *See* WIS JI—CRIMINAL 1296; WIS. STAT. §§ 940.44 and 940.45(3). As to these elements, the jury heard

9

testimony that Peterson, after committing the battery and strangulation against J. and hearing that J.'s sister threatened to call the police, and while holding a knife, ordered J. and L. to go to bed, kept J.'s phone in the kitchen, and then shut the curtains and turned off the lights. Peterson then proceeded to pace in L.'s room and watch out the front-facing window, at one point saying to L. that if he "ever told anybody, I'm going to give you a slow, painful death." Although J. did not hear that threat, it provides context to explain Peterson's motivations for darkening the house and shutting the curtains and contributes to the inference that Peterson's actions were knowingly aimed at also preventing J. from reporting the battery and strangulation to the police. J.'s testimony about declining to report the attack to the police contributes to that inference. A jury could reasonably infer from all of this testimony, in the light most favorable to the conviction, that Peterson believed that the police were called to his house and that he was attempting to prevent J. from communicating with the police by instructing her to go to bed, retaining her phone, and making the house appear as though the occupants were sleeping, thus satisfying the second and third elements.

¶29 The fourth element is that the act was accompanied by an express or implied threat of force, violence, injury or damage. *See* WIS JI—CRIMINAL 1296; WIS. STAT. §§ 940.44 and 940.45(3). Given L.'s and J.'s testimony about Peterson's violent attack against J. for merely deleting a text from her phone and his pattern of violence against her, L.'s testimony that Peterson had a knife towards the end of the attack when he ordered J. to go to bed, and J.'s testimony that Peterson then kept her phone in the kitchen and that she did not want to report the incident to police because she feared his response when he was released from custody, a jury could reasonably infer that Peterson implicitly threatened violence

10

or injury should J. report the incident to police. Accordingly, we conclude that there was sufficient evidence to support the jury's finding of guilt on count one.

¶30 Peterson argues that the State could not prove that he attempted to prevent or dissuade J. from reporting the battery or strangulation because "[t]he State did not present any evidence that [J.] ever attempted or intended to report these crimes to the police," and that there was no testimony that "Mr. Peterson told [J.] not to go to the police or asked or encouraged her not to report the incident." However, the State was not required to prove that J. actually attempted or intended to report the crimes to the police or that Peterson explicitly told J. not to go to the police. Neither the victim's attempt or intention to report the crime, nor the perpetrator's explicit direction not to report are elements of this offense. *See* WIS. STAT. §§ 940.44 and 940.45(3).

¶31 Peterson also makes the conclusory assertion that the threat to harm J. during the physical assault "had nothing to do with reporting the crime" and thus "there was no evidence that Mr. Peterson made an express or implied threat of force or violence towards [J.] if she reported." However, this argument ignores the implied threat of force following this attack that could reasonably be inferred from the following evidence: J.'s testimony of Peterson's pattern of violent conduct against her, including this attack in response to her deleting a text from her phone; L.'s testimony that Peterson had a knife at the end of the attack when he told J. to go to bed; and J.'s testimony that she declined to report the attack for fear of his response.

¶32 In sum, we conclude that sufficient evidence supported Peterson's conviction on count one.

11

## II. Amendment of Count One

¶33    Peterson argues that the circuit court erred in granting the State's motion to amend count one after the close of evidence.

¶34    We summarize the applicable law and standard of review for amending a charge and next provide additional pertinent background. We then explain why we conclude that the circuit court did not err in amending count one at the close of evidence at trial and we address and reject Peterson's arguments to the contrary.

### A. Applicable Law and Standard of Review

¶35    We review the circuit court's amendment of the criminal complaint for an erroneous exercise of discretion. *State v. Malcom*, 2001 WI App 291, ¶23, 249 Wis. 2d 403, 638 N.W.2d 918. "At the trial, the [circuit] court may allow amendment of the complaint, indictment or information to conform to the proof where such amendment is not prejudicial to the defendant." WIS. STAT. § 971.29. "[T]he State must satisfy two tests for an amendment to be sustained: the 'wholly unrelated test' and the 'constitutional notice test.'" *Malcom*, 249 Wis. 2d 403, ¶26 (quoting *State v. Neudorff*, 170 Wis. 2d 608, 619, 489 N.W.2d 689 (Ct. App. 1992)).

¶36    Under the "wholly unrelated test," the State may amend an information "as long as the additional counts are not wholly unrelated to the transactions or facts considered or testified to at the preliminary hearing." *Malcom*, 249 Wis. 2d 403, ¶26. Specifically, "[t]he charges must be 'related in terms of parties involved, witnesses involved, geographical proximity, time,

physical evidence, motive and intent.'" *Neudorff*, 170 Wis. 2d at 616-17 (quoted source omitted).

¶37 Under the "constitutional notice test," "the issue is whether [a defendant] received constitutional notice of the new charge such that he [or she] could prepare and defend against it." *Id.* at 617. "[A] charge may be undeniably related to the transaction or facts considered at the preliminary hearing and yet, if there is no adequate notice of that charge, the prosecution cannot be legally sustained." *Id.* "Notice to the defendant of the nature and cause of the accusations is a key factor in determining whether an amended charging document has prejudiced a defendant." *Id.* at 619.

¶38 In evaluating whether a defendant had constitutional notice of the new charge, courts look to whether the defendant was able to prepare a defense to the new charge, or, whether "preparation for the new charge would be no different than the preparation for the old charge." *Malcom*, 249 Wis. 2d 403, ¶30; *see also Neudorff*, 170 Wis. 2d at 619-21 (concluding that while the original and amended charges were undoubtedly related, the differences between them required a different defense theory for the amended charge that the defendant could not have prepared due to the lack of notice; accordingly, the defendant was prejudiced by the amendment); *State v. Frey*, 178 Wis. 2d 729, 737, 505 N.W.2d 786 (Ct. App. 1993) (stating that "[b]ecause Frey's defense theory was not affected by the amendment and the record does not support his claim that he would have [presented a different defense], we conclude that Frey was not prejudiced by the amendment."); *Malcom*, 249 Wis. 2d 403, ¶¶29-30 (concluding that, based upon the same reasoning as in Frey, the defendant was not denied his constitutional

13

right to defend himself because "preparation for the new charge would be no different than the preparation for the old charge.").

¶39    Accordingly, the relevant inquiry regarding constitutional notice is whether the charges are "so related to the transaction and facts adduced at the preliminary hearing that a defendant cannot be heard to say that he or she is surprised by the new charge since the preparation for the new charge would be no different than the preparation for the old charge.'" *Id.*, ¶30 (citing *Neudorff*, 170 Wis. 2d at 617-18).

### B.  Additional Background

¶40    Count one in the information charged Peterson with intimidation of a witness under WIS. STAT. §§ 940.42 (misdemeanor base offense) and 940.43(1) (felony circumstances), alleging that Peterson "knowingly and maliciously did attempt to dissuade a witness, [J.], from attempting or giving testimony at a trial, proceeding or inquiry authorized by law, where the act is accompanied by force or violence."  "Witness" is defined as "any natural person who has been or is expected to be summoned to testify."  WIS. STAT. § 940.41(3).  The day before trial, the State filed a motion to amend count one from felony intimidation of a witness under § 940.43(1), "act accompanied by force or violence," to § 940.43(3), "act accompanied by express or implied threat of force or violence." However, at the hearing on the morning of trial, the State withdrew its request to amend count one.

¶41    After the jury was sworn, trial counsel asked the State to clarify which statute it was proceeding under for count one.  Trial counsel stated,

14

> in count one in [the] Amended Information, it states 940.43(3) is the statute that the State is proceeding under, that is, intimidation of a witness, and I just would note that I would object to any entrance of any evidence intended for a conviction under 940.44, which is intimidation of victims; so that would be my objection now that the jury has been sworn."

The State replied that it would be proceeding under WIS. STAT. § 940.43(1), intimidation of a witness.

¶42     At the close of evidence, trial counsel moved for acquittal on count one.  Trial counsel argued that the State failed to present evidence to support the charge of intimidation of a witness because there was no evidence that, at the time of the alleged intimidation, J. had been called to "giv[e] testimony at a trial, proceeding, or inquiry authorized by law."  The State responded that the elements were satisfied by the evidence presented, but in the alternative, the State requested that the circuit court amend count one to charge intimidation of a victim under WIS. STAT. § 940.45(3), where the act is accompanied by any express or implied threat of force, violence, injury or damage, in order to conform to the evidence presented at trial.  The State clarified that J. was the alleged victim for both the intimidation of a witness and the intimidation of a victim charges, and that the State "would be relying on [L.'s] statement that the defendant had a knife afterwards as well as instructions the defendant gave for him to go to bed and general behavior from that evening."

¶43     Trial counsel objected to the amendment, stating that this issue had been raised prior to trial and that "[p]robably the time to ask for an amendment would have been back then before we went all the way through this, but I think this one needs to be dismissed."

15

¶44    The circuit court allowed the amendment in order to conform count one to the facts presented at trial.

¶45    During closing argument, regarding amended count one, trial counsel highlighted J.'s testimony on cross examination about her possession of a cell phone the day following the incident when she went shopping with L. and was no longer in Peterson's presence. Counsel argued that, because J. then had access to her phone, "[t]here is no evidence here that she ever wanted anything to be reported" and that "she never said at all she planned on calling the cops or making any sort of a report."

¶46    Peterson filed a postconviction motion regarding count one raising ineffective assistance of counsel and insufficiency of evidence grounds. A ***Machner*** hearing was granted for the ineffective assistance claim (which we address further below) and, at the hearing, the topic of the amendment and trial counsel's strategy to defend against count one arose. Trial counsel testified that, based on his trial notes,

> I had prepared to go and argue kind of the same way to either [charge], whether it be a victim or a witness in my closing argument there, so strategy-wise, it would have been the same type of closing argument that I would have made and the same types of questions I would have asked, and it looks like I was asking questions there about phone access, trying to call, things like that; so really, the victim, witness was really more of a how you define the person there as compared to … the actual arguments I would have made about what they could or could not do.

## C. Analysis

¶47    Peterson argues that the circuit court erred in allowing the State to amend count one because the State could not meet the "wholly unrelated test" and

the "constitutional notice test." *See Malcom*, 249 Wis. 2d 403, ¶26. We address each test in turn.

### 1. Wholly Unrelated Test

¶48 In this case, both the original and amended counts involved the same parties (Peterson and J.), the same witnesses (J. and L.), and the same location, date, and time. The record reveals no difference as to Peterson's motive and intent whether J. was a witness or a victim, or whether Peterson acted with force of violence or with the threat of force of violence. *Compare* WIS. STAT. §§ 940.42-.43 and 940.44-.45, and 940.43(1) and 940.45(3). *See Neudorff*, 170 Wis. 2d at 616-17 (to satisfy the wholly unrelated test, "[t]he charges must be 'related in terms of parties involved, witnesses involved, geographical proximity, time, physical evidence, motive and intent.'" (quoted source omitted)). Given these similarities, we cannot conclude that the original and amended counts failed the wholly unrelated test.

¶49 Peterson appears to argue that the original and amended counts were wholly unrelated, thus failing this test, because "the elements of the offense of felony intimidation of a witness and felony intimidation of a victim are completely different." However, Peterson fails to cite any legal authority to support his assertion that merely having different elements in the original and amended counts suffices to make the counts "wholly unrelated" when both charges have the same "parties involved, witnesses involved, geographical proximity, time, [and] … evidence." *Id.* at 616-17. Accordingly, we reject this argument on that basis. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we may disregard arguments unsupported by references to legal authority). Moreover, we observe that the law is to the contrary. *See Frey*, 178 Wis. 2d at 735-37

17

(upholding an amendment to the information at the close of evidence where the amended charge contained a mental state element that the original charge did not).

## 2. Constitutional Notice Test

¶50     Nor did the amendment fail the constitutional notice test. Peterson had notice of the nature and cause of the amended count. In addition to the similarities stated above, the basis of the charge against Peterson did not change. The evidence relied upon by the State in an attempt to prove the original count was the same evidence that supported the amended count: L.'s testimony regarding Peterson's possession of a knife towards the end of the attack and Peterson's ordering L. and J. to go to bed once they were told the police might be called and Peterson's turning off the lights and shutting the curtains; and J.'s testimony regarding Peterson's pattern of violence, Peterson's engaging in the attack in response to her deleting a text from her phone, Peterson's retention of her phone the night of the attack, and her declining to report the attack for fear of Peterson's response.

¶51     Further, the evidence does not show or suggest that Peterson would have presented different witnesses or a different defense theory in defense of the amended charge. The facts relevant to Peterson's defense to the original count were equally relevant to his defense to the amended count: J.'s possession of a phone the next day and her ability to call the police outside of Peterson's presence if she wanted to. Trial counsel testified at the *Machner* hearing that he would have prepared the same, asked the same questions of the witnesses, and made the same closing argument with respect to the original and the amended counts. Accordingly, there is no basis on which to conclude that Peterson was prejudiced by the late amendment due to an inability to prepare a defense to the amended

18

count. *See **Neudorff***, 170 Wis. 2d at 619-20 (defendant was prejudiced by the amendment because the lack of notice as to the factual basis of the new charge prevented the defendant from preparing a "coherent theory of defense to present to the jury."); *see also **Malcom***, 249 Wis. 2d 403, ¶28 (defendant was not prejudiced by an amendment where the evidence relied upon by the State to prove both counts was the same, both counts had the same factual basis, and the record did not show or suggest that the defendant would have presented different witnesses to the amended count.).

¶52 Peterson appears to argue that his defense theory would have changed had the amendment been made with adequate time before trial because trial counsel was relying solely on the State's failure to meet its burden as to count one and therefore did not present a complete defense. In support of this argument, Peterson points to the fact that the State moved to amend count one only after trial counsel moved for acquittal on that count. In addition, we note that, during his ***Machner*** testimony, trial counsel testified that his "[g]eneral strategy" for the whole trial "was to rely on the burden of proof."

¶53 However, the record contradicts Peterson's assertion that trial counsel solely relied on the State's failure to satisfy its burden of proof and, therefore, did not present a defense. As stated, trial counsel also testified at the ***Machner*** hearing that, as to count one, he had prepared the same and would have

asked the same questions and made the same arguments regardless of whether the count was as originally charged or as amended.[5]

¶54 Peterson alternatively argues that "[h]ad defense counsel been able to sufficiently prepare for the [amended count], it is likely that he would have been better prepared to object to the errors set forth next in Argument II" regarding Peterson's ineffective assistance of counsel claims based upon the State's closing argument and the jury instruction for count one. However, as we next explain, trial counsel was not ineffective in his representation as to count one.

¶55 In sum, we conclude that the circuit court did not err in granting the State's motion to amend count one after the close of evidence.

### III. Ineffective Assistance of Counsel as to Count One

¶56 Peterson argues that his trial counsel rendered constitutionally ineffective assistance with respect to count one by failing to object to the State's "misleading" closing argument and an inaccurate jury instruction.

¶57 We first state the standard of review and general legal principles governing ineffective assistance of counsel claims. We next address the closing argument and jury instruction issues in turn. As to each issue, we state specific legal principles and provide additional background, explain our conclusion that

---

[5] Peterson cites two cases, *State v. Frey*, 178 Wis. 2d 729, 505 N.W.2d 786 (Ct. App. 1993), and *State v. Malcom*, 2001 WI App 291, 249 Wis. 2d 403, 638 N.W.2d 918, as examples of cases in which the court upheld an amendment where the only change was a different mode of commission rather than a different statute, but he does not develop any argument about how those cases apply to invalidate the amendment here.

Peterson was not denied effective assistance of counsel, and address and reject Peterson's arguments to the contrary.

### A. Standard of Review and General Legal Principles for Ineffective Assistance of Counsel Claims

¶58 "Whether a defendant received ineffective assistance of counsel is a mixed question of law and fact." *State v. Maday*, 2017 WI 28, ¶25, 374 Wis. 2d 164, 892 N.W.2d 611. The circuit court's findings of fact will not be disturbed unless those findings are clearly erroneous. *Id.*, ¶25. "'The circumstances of the case and … counsel's conduct and strategy' are considered findings of fact." *Id.* (quoted source omitted). However, whether those facts constitute deficient performance and whether such deficient performance was prejudicial are questions of law that we review independently. *See State v. Tulley*, 2001 WI App 236, ¶5, 248 Wis. 2d 505, 635 N.W.2d 807.

¶59 A defendant claiming ineffective assistance of counsel must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "[T]here is no reason for a court deciding an ineffective assistance claim … to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. The defendant bears the burden on both of these elements. *State v. Roberson*, 2006 WI 80, ¶24, 292 Wis. 2d 280, 717 N.W.2d 111.

¶60 Counsel's performance is "constitutionally deficient if it falls below an objective standard of reasonableness." *State v. Thiel*, 2003 WI 111, ¶19, 264 Wis. 2d 571, 665 N.W.2d 305. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,'

not whether it deviated from best practices or most common custom." ***Harrington v. Richter***, 562 U.S. 86, 105 (2011). In other words, professionally competent assistance encompasses a "wide range" of conduct, and a reviewing court starts with the presumption that counsel's assistance fell within that wide range. ***Strickland***, 466 U.S. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." ***Id.*** A defendant's burden is to show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." ***Id.*** at 687.

¶61 Counsel's deficient performance is constitutionally prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." ***Thiel***, 264 Wis. 2d 571, ¶20 (quoted source omitted). "[A] defendant need not prove the outcome would 'more likely than not' be different in order to establish prejudice in ineffective assistance cases." ***State v. Sholar***, 2018 WI 53, ¶44, 381 Wis. 2d 560, 912 N.W.2d 89 (citing ***Strickland***, 466 U.S. at 693). "Accordingly, a defendant need not prove the jury would have acquitted him [or her], but he [or she] must prove there is a reasonable probability it would have, absent the error." ***Id.***, ¶46. In other words, the prejudice component asks "whether it is 'reasonably likely' the result would have been different." ***Harrington***, 562 U.S. at 111. "The likelihood of a different result must be substantial, not just conceivable." ***Id.*** at 112.

### B. Failure to Object to the State's Closing Argument

¶62    Peterson argues that he was denied effective assistance of counsel because his trial counsel failed to object to a "misleading" closing argument by the State as to count one.

### 1. Additional Legal Principles

¶63    Failing to object to the State's closing argument is not deficient "unless the State's trial commentary was improper." *State v. Bell*, 2018 WI 28, ¶14, 380 Wis. 2d 616, 909 N.W.2d 750; *see also State v. Cameron*, 2016 WI App 54, ¶27, 370 Wis. 2d 661, 885 N.W.2d 611 ("Because the prosecutor's remarks were not improper, an objection would not have been sustained.  It is not deficient performance for counsel not to make a pointless objection.").

¶64    "Although there are boundaries on what prosecutors may say during trial, we leave them plenty of room to address the facts and law.  'Counsel is allowed considerable latitude in closing arguments, with discretion given to the trial court in determining the propriety of the argument.'"  *Bell*, 380 Wis. 2d 616, ¶39 (quoting *State v. Burns*, 2011 WI 22, ¶48, 332 Wis. 2d 730, 798 N.W.2d 166).  "[I]t is impossible to describe in detail the outer parameters of proper trial commentary.   However … those boundaries extend at least far enough to encompass fair characterizations of the law and the state of evidence."  *Id.*, ¶40; *see also State v. Neuser*, 191 Wis. 2d 131, 137, 528 N.W.2d 49 (Ct. App. 1995) (a prosecutor's closing argument is improper if it misstates the law.).

## 2. Additional Background

¶65    Count one as amended charged Peterson with felony intimidation of a victim under WIS. STAT. §§ 940.44 (misdemeanor base offense) and 940.45(3) (felony circumstances), alleging that Peterson "knowingly and maliciously did attempt to dissuade [J.], who has been the victim of a crime, from making a report of the victimization to a law enforcement agency, where the act is accompanied by any express or implied threat of force, violence, injury or damage." The element that elevates misdemeanor intimidation of a victim to the felony offense charged here is the "express or implied threat of force, violence, injury or damage." Sec. 940.45(3).

¶66    The State argued as follows during its closing argument:

> The defendant attempted to dissuade [J.] from reporting the crime to any law enforcement agency[,] from making a police report. He clearly didn't want her talking to anyone about this incident. When he thought her sister was calling the police, it's time for everyone to go to bed. The defendant acted knowingly and maliciously. This just means that it was his intent, his mental purpose that it not be reported, that [J.] not talk, that justice be obstructed.
>
> Was the defendant's act accompanied by an express or implied threat of force or violence upon [J.]? He just finished strangling her. He then has a knife out. He has also told her that he will [expletive] kill her ….
>
> ….
>
> When he believes that law enforcement might be called, he is telling them to go to their rooms, he is shutting off all the lights, he is watching out the blinds, and he tells [L.] that if he tells anyone, he would die a slow and painful death.

¶67    Trial counsel did not object to the State's closing argument. Peterson filed a postconviction motion that included a claim of ineffective

assistance of counsel as to count one based on trial counsel's failure to object to the State's closing argument. At the ***Machner*** hearing, trial counsel was asked whether he "recall[s] that the State argued that the physical altercation itself was an implied threat of harm[.]" Trial counsel responded,

> I think in this case not only was there strangulation and battery, but I think—I believe the boy testified about a knife and a threat to kill and also that everybody needed to go to bed is the potential threat, so again, I—that didn't send off any bells at that point when [the prosecutor] said that.

¶68 Trial counsel additionally testified that

> I'm probably one who doesn't like to object in openings or closings any more than what I might absolutely have to because, one, you know, it calls attention to something, and actually, what was said there didn't quite, you know, hit me at the time that there was something off with it, so even looking at it now, I don't think I would have objected to it[.]

¶69 The circuit court denied Peterson's postconviction motion as to this ineffective assistance of counsel claim. In its denial, the circuit court pointed to Peterson's failure to cite any legal authority to support his assertion that the closing argument was "misleading" because "the act making a person a victim and the act of intimidation must be separate acts and cannot be folded into one another." The court stated that the defendant did not show that trial counsel acted ineffectively by failing to object, or that the choice to not object, "even if deemed below professional standards, deprived the defendant of a fair trial with a reliable result."

### 3. Analysis

¶70 As we now explain, the State mischaracterized neither the law nor the evidence and, therefore, trial counsel's failure to object to the State's closing does not constitute ineffective assistance of counsel. *See Cameron*, 370 Wis. 2d 661, ¶27 ("It is not deficient performance for counsel not to make a pointless objection.").

¶71 Peterson contends that the State was arguing that "because Mr. Peterson committed a violent crime against [J.] that included a threat to injure, any subsequent attempt to dissuade her from reporting was automatically accompanied by an implied threat of violence," which would "essentially eliminate[] the misdemeanor offense." However, the State's argument, read in context, was not that the conduct supporting the battery or strangulation charges alone would be "sufficient to constitute felony intimidation of a victim." Rather, this court reasonably reads the State's argument in its entirety to mean that the immediately preceding acts of violence against J., coupled with Peterson's actions directed at preventing J.'s communication with the police immediately after those acts of violence, created an implied threat of future violence and demonstrated Peterson's capacity for such future violence if J. attempted to contact the police to report the immediately preceding violent acts committed against her. This is not an improper argument.

¶72 To the extent that Peterson argues that prior acts of violence cannot as a matter of law form a basis for a subsequent "express or implied threat of force [or] violence," WIS. STAT. § 940.45(3), we also reject that argument as unsupported by legal authority. *See Pettit*, 171 Wis. 2d at 646 (arguments unsupported by references to legal authority need not be considered).

¶73    In sum, Peterson cannot show that his trial counsel was deficient for failing to object to the portion of the State's closing argument referring to count one because that portion of the argument was not objectionable.  Therefore, his ineffective assistance of counsel claim as to this alleged error fails.

*C. Failure to Object to an Erroneous Jury Instruction*

¶74    Peterson argues that his trial counsel was constitutionally ineffective for failing to object to an inaccurate jury instruction for count one.  Specifically, Peterson argues that the jury instruction given on count one failed to adequately define the fourth element of felony intimidation of a victim and probably misled the jury.

### 1.  Additional Background

¶75    The pattern jury instruction tells the jury to answer the following question regarding the fourth element of count one:  "Was the defendant's act accompanied by any express or implied threat of (name of harm described in sub. (1) or (2) of [WIS. STAT.] § 940.45)?"  WIS JI—CRIMINAL 1296.  Subsections (1) and (2) identify two distinct types of harm:  "force or violence or attempted force or violence upon the victim, or the spouse, child … or any person sharing a common domicile with the victim;" and "injury or damage to … real or personal property."  Sec. 940.45(1) and (2).

¶76    The circuit court instructed the jury to answer this question:  "Was the defendant's act accompanied by any express or implied threat of harm to the victim."  The circuit court did not name a harm as described in WIS. STAT. § 940.45(1) or (2).  Trial counsel did not object to this instruction.

¶77    Peterson filed a postconviction motion in which he raised an ineffective assistance of counsel claim based upon trial counsel's failure to object to the instruction. At the *Machner* hearing on the motion, trial counsel testified that he did not "believe" that he considered objecting to the instruction. Trial counsel testified, "I think that one just came at us fast. … [F]or me, the charge changed … and I went through [th]em, I just didn't catch it."

¶78    The circuit court denied Peterson's postconviction motion as to the jury instruction on count one, stating that because "[t]he State charged [count one] under WIS. STAT. § 940.45(3), indicating an express or implied threat of harm … the instruction which would have been given would have read, '[w]here the act is accompanied by any express or implied threat of force, violence, injury or damage upon the victim, or the spouse, child or any person sharing a common domicile with the victim.'" Further, the only violence or threat testified to at trial was towards J. (the victim) or L. (her son), and therefore, "the instruction given and the instruction prayed for by the defendant are functionally equivalent."

## 2. Analysis

¶79    Peterson argues that by neglecting to insert one of the "definitions of harm," the instruction was "erroneous because it failed to provide a complete statement of the applicable law," "probably misled the jury" and allowed the jury to find guilt on this element for a harm not provided in the statute, like psychological harm. Accordingly, Peterson argues that his trial counsel was ineffective for failing to object to the jury instruction.

¶80    The State appears to concede that the instruction was erroneous, and the State "assumes deficient performance" based on trial counsel's testimony at

the *Machner* hearing that he did not object to the instruction because he "just didn't catch" the omission of the language specifying a type of harm. We accept the State's concession and turn to whether that deficient performance was prejudicial.

¶81    According to the law as stated above, in this case we examine whether there was a "substantial, not just conceivable," *Harrington*, 562 U.S. at 112, likelihood that the jury would have acquitted Peterson on count one if the jury instruction had stated "force or violence or attempted force or violence upon the victim, or the spouse, child … or any person sharing a common domicile with the victim" instead of simply "harm." Given the facts of the case, we conclude that Peterson cannot meet his burden to show that it was "reasonably likely" that the jury would have acquitted him had the jury instruction for count one specified the type of harm. We agree with the circuit court that the only evidence of harm that the jury heard was evidence of physical force and violence, actual and threatened, against J. and her son, L.

¶82    We also note that during the State's closing argument, the prosecutor went through the elements of each charge, including the four elements of felony intimidation of a victim. Regarding the fourth element, the prosecutor used the language from the pattern jury instruction, stating, "[w]as the defendant's act accompanied by an express or implied threat of force or violence upon [J.]? He just finished strangling her. He then has a knife out. He also told her that he will [expletive] kill her." Because the State used the language in its closing argument that Peterson asserts should have been used in the instruction, and then described specific acts of violence that would support the charge, it is unlikely that the jury convicted Peterson based upon a non-statutory type of harm.

29

¶83 In sum, viewing the jury instruction in the context of the entire trial, Peterson was not prejudiced by trial counsel's performance because there is no reasonable likelihood that the jury would have acquitted had the instruction specified "force or violence or attempted force or violence upon the victim, or the spouse, child … or any person sharing a common domicile with the victim." WIS. STAT. § 940.45(1).

¶84 Peterson argues that "[b]y failing to define a key element, the instruction relieved the Sate of its burden of proof on element four," and that the instruction "'probably misled the jury' by telling them that they did not have to specifically find a threat of force, violence, and/or injury or damage to property." However, we first emphasize that the State was not relieved of its burden of proof as to element four simply because the instruction stated "harm" instead of "force or violence." The instruction required that the jury find a threat of harm to the victim, and Peterson does not persuade us that a finding of such "harm" here is not sufficient to satisfy the statute, which specifies physical harm to the victim or her child, given that the only evidence of "harm" presented to the jury was evidence of physical force and violence, actual and threatened, against J. and her son, L., and that the State articulated the proper standard in its closing.

¶85 Peterson argues that he was prejudiced by counsel's failure to object to the jury instruction because the jury may have found some "undefined colloquial 'harm'" that includes "psychological damage or injury" as well as "immoral or unjust effects,"[6] rather than a type of harm as stated in WIS. STAT.

---

[6] Peterson cites *The American Heritage Dictionary of the English Language* (5th ed. 2011) for this definition.

§ 940.45(1) and (2). We disagree. Peterson fails to make a persuasive argument that the jury might have been considering psychological damage or injury or immoral or unjust effects as the kind of harm being threatened. To repeat, there was no testimony about any kind of actual or threatened harm to J. aside from physical violence, and the State in closing made no argument that psychological harm would suffice and, in fact, directed the jury to consider the proper standard, i.e., whether the evidence established an express or implied threat of force or violence.

¶86    Peterson further argues that "it does make sense" that the jury might have convicted on the premise that Peterson threatened psychological harm, because threatening such harm "is a recognized offense," in the State of Wisconsin, Department of Administration, Human Resources Handbook, which defines as a rule violation, "[t]hreatening or attempting to inflict, or inflicting bodily harm to or mental anguish to another person."[7]   However, Peterson fails to explain how a State of Wisconsin Human Resources rule violation has any relevance to a criminal jury trial for battery, strangulation, disorderly conduct, and intimidation of a victim, or explain why the jury was likely to be considering rule violations for State employees during its deliberation.

¶87    In sum, Peterson does not meet his burden of showing that he was prejudiced by trial counsel's failure to object to the jury instruction, because it was not "reasonably likely" that the jury would have acquitted him of count one had "harm" been properly specified as "force or violence or attempted force or

---

[7] State of Wisconsin, Department of Administration, Human Resources Handbook Ch.410, at 3 (2021), https://dpm.wi.gov/Hand%20Book%20Chapters/WHRH_Ch_410.pdf.

violence upon the victim, or the spouse, child … or any person sharing a common domicile with the victim" in the instruction. *See **Harrington***, 562 U.S. at 111; WIS. STAT. § 940.45(1).

### IV. Amendment to Count Four

¶88 Peterson argues that the circuit court erred by granting the State's motion to amend count four on the morning of trial.

¶89 We first state the standard of review and applicable legal principles. We then apply those principles and provide additional background. We then explain our conclusion that the court did not err in allowing the State to amend count four on the morning of trial and address and reject Peterson's arguments to the contrary.

### A. Standard of Review and Applicable Legal Principles

¶90 The standard of review and applicable legal principles for amending a count in an information are stated in full in ¶¶35-39 above. For convenience, we summarize that law briefly here.

¶91 "Whether to allow amendment of the information … is within the discretion of the trial court and will not be reversed absent an erroneous exercise of discretion." *Malcom*, 249 Wis. 2d 403, ¶23. The State may, pursuant to the circuit court's discretion, amend any information prior to trial if the defendant's rights are not prejudiced. *Whitaker v. State*, 83 Wis. 2d 368, 373, 265 N.W.2d 575 (1978). The State may amend an information "as long as the additional counts are not wholly unrelated to the transactions or facts considered or testified to at the preliminary hearing." *Malcom*, 249 Wis. 2d 403, ¶26. Specifically,

"[t]he charges must be 'related in terms of parties involved, witnesses involved, geographical proximity, time, physical evidence, motive and intent.'" *Neudorff*, 170 Wis. 2d at 616-17. In addition, the record must show that the defendant "received constitutional notice of the new charge such that he [or she] could prepare and defend against it." *Id.* at 617.

### B. Additional Background

¶92 Count four of the information charged Peterson with attempted strangulation and suffocation, under WIS. STAT. §§ 939.32(3) (attempt) and 940.235(1) (strangulation and suffocation). The day before trial, the State filed a letter and a motion requesting to amend count four to strangulation and suffocation without the "attempt" qualifier. The State sought the amendment because L. stated in an interview in preparation for trial that he intervened between Peterson and J. because he heard J. gasp as Peterson had his hands around her neck.

¶93 Trial counsel filed a letter objecting to the State's motion to amend the information, stating, "[c]ount [four] is now a more serious strangulation and suffocation charge. The Defendant had no notice that he would have to defend against [the] more severe charge. The elements of the charges are different."

¶94 During the pretrial hearing on the morning of trial, the circuit court heard the party's arguments as to the amendment and asked trial counsel to explain his objection to the amendment to count four given that it "in fact, rais[es] the bar for the State[.]" Trial counsel stated, "besides the penalty … I wrote out questions today with respect to an attempt both for the witnesses of the State and for Mr. Peterson."

¶95    The circuit court responded that it was "having a hard time … understanding" why trial counsel would not be ready to defend against the completed strangulation charge if he was ready to defend against the attempted strangulation charge because "the facts are basically the same ….  If he prevails in preventing a conviction for an attempted strangulation, I would think that he would prevail in the same manner in preventing a conviction for a strangulation as that bar is higher again."  Trial counsel responded that "we are just not on notice of the higher penalties."

¶96    The circuit court granted the State's request to amend count four, stating,

> I don't think that there is prejudice here to amend that charge, and I am going to give defense counsel and the defendant an opportunity to discuss that increased penalty, which is really the only difference when we get through this thing, in the [c]ourt's mind.
>
> Obviously, there is a difference between attempt and the consummation of the actual crime, but in preparing a defense, I don't find that there is any prejudice in this case with the State raising the bar ….  [T]hey are just setting a higher bar for themselves here.
>
> The facts are the same, and I think it makes sense to do that, so I will allow that, so you may have an Information drafted that amends … attempted strangulation to strangulation.

### C. Analysis

¶97    As we now explain, Peterson fails to show that the circuit court erred.  The amended count four (strangulation and suffocation) is identical to the original count four (attempted strangulation and suffocation) in terms of "parties involved, witnesses involved, geographical proximity, time, … evidence, motive

and intent." *See Neudorff*, 170 Wis. 2d at 616-17 (to satisfy the wholly unrelated test, "[t]he charges must be 'related in terms of parties involved, witnesses involved, geographical proximity, time, physical evidence, motive and intent.'" (quoted source omitted)).

¶98 Further, Peterson also had notice of the nature and cause of the added count "such that he could prepare and defend against it." *See id.* The amended count is charged under the same statute as the original count, WIS. STAT. § 940.235(1), and the sheriff deputy's report entered as an exhibit at the preliminary hearing detailed Peterson's conduct that formed the basis of both the original and amended counts. In addition, "the evidence does not show or suggest that [Peterson] would have presented different witnesses in defense of the amended charge," *Malcom*, 249 Wis. 2d 403, ¶28, and Peterson does not develop any argument to the contrary.

¶99 Accordingly, the record does not indicate that the amendment on the morning of trial prevented Peterson from preparing a defense to the amended count and, therefore, Peterson was not prejudiced by the amendment. *See Malcom*, 249 Wis. 2d 403, ¶¶28-30 (defendant was not prejudiced by the amendment where both counts were charged under the same statute, he was aware of the facts underlying the added count, the evidence relied upon by the State for both counts was the same, and the evidence does not show the defendant would have presented different witnesses in defense of the amended count). The charges are "so related to the transaction and facts adduced at the preliminary hearing that [Peterson] cannot be heard to say that he … is surprised by the [amended] charge since the preparation for the [amended] charge would be no different than the

35

preparation for the [original] charge." *Id.*, ¶30 (quoting *Neudorff*, 170 Wis. 2d at 617-18).

¶100　Peterson appears to argue he was prejudiced by the amendment to count four for three separate reasons. First, Peterson states "[trial] counsel … prepared questions for the witnesses based on the original charge." However, Peterson does not explain how a successful defense to attempted strangulation and suffocation would not also serve as a successful defense to the completed offense and does not develop any argument that the amended count four required a different defense theory for which he was unable to prepare. Moreover, as stated above, the record does not show or suggest that the pretrial amendment prevented Peterson from presenting a "coherent theory of defense" to the jury. *See Neudorff*, 170 Wis. 2d at 620.

¶101　As part of this first reason, Peterson states that "[r]emoving the attempt meant that the State no longer simply had to prove that Mr. Peterson attempted to impede [J.]'s breathing but that he actually did so;" and that "removing the attempt doubled the maximum penalty Mr. Peterson was facing." However, Peterson does not develop any argument or cite any legal authority to support his assertion that raising the State's burden or the maximum penalty makes the amendment prejudicial. We reject his argument for this reason. *See Pettit*, 171 Wis. 2d at 646 (we may disregard arguments unsupported by references to legal authority).

¶102　Second, Peterson argues that defense counsel was unable to effectively defend against the amended count four due to the morning-of-trial amendment, based on counsel's failure to impeach J. with a prior inconsistent statement and failure to advocate for the jury's request for a portion of J.'s

testimony regarding her ability to breathe to be read back. However, as we explain below, trial counsel was not ineffective as to his representation on count four.

¶103 Third and last, Peterson argues that the amendment violated Peterson's right to a speedy trial because the State requested that the circuit court grant a continuance in the event that trial counsel was not prepared to proceed to trial under the amended information, which Peterson asserts was "not a fair remedy." Whether or not a continuance was appropriate is not the test to evaluate whether the circuit court erred in allowing an amendment at trial. Rather, we evaluate "whether the new charge is 'so related to the transaction and facts adduced at the preliminary hearing that a defendant cannot be … surprised by the new charge since the preparation for the new charge would be no different than the preparation for the old charge.'" *Malcom*, 249 Wis. 2d 403, ¶30 (citing *Neudorff*, 170 Wis. 2d at 617-18). As explained above, we conclude that it was, and therefore the circuit court did not err in allowing the amendment.

## V. Ineffective Assistance of Counsel as to Count Four

¶104 Peterson argues that his trial counsel was constitutionally ineffective for failing to impeach the victim with prior statements and failing to advocate for the jury's request to have testimony read back.

¶105 The standard of review and general legal principles governing ineffective assistance of counsel claims are well established and stated above in full in ¶¶58-61. We proceed to address each of the ineffective assistance issues as to count four in turn. For each issue, we first provide additional pertinent background, we next explain our conclusion that Peterson was not denied effective

assistance of counsel, and we address and reject Peterson's arguments to the contrary.

### A. *Failing to Impeach the Victim with Prior Statements*

¶106   Peterson argues that his trial counsel provided ineffective assistance as to count four because he failed to impeach J. at trial with a prior statement that contradicted her trial testimony.

### 1. Additional Background

¶107   Count four of the amended information charged Peterson with strangulation and suffocation in violation of WIS. STAT. § 940.235, alleging that Peterson "did intentionally impede the normal breathing by applying pressure on the throat or neck of another person."

¶108   Prior to trial, J. discussed this incident and other incidents between her and Peterson with the prosecutor and a detective, and her statements were documented in a police report that was subsequently provided to trial counsel. According to the report, J. told the detective and prosecutor that she could always breathe when Peterson choked her because Peterson would put his hands high up under her chin and not lower on her neck.

¶109   At trial, J. testified that during the incident, Peterson put his hands on her throat, but that she could not remember whether or not she was able to breathe. While trial counsel did ask about J.'s statement to the detective leading up to trial, counsel did not impeach J. with her prior statement:

> [Trial counsel]:  [H]ave you recently … talk[ed] to a Detective Kirn?

….

[J.]:  Yes.

….

[Trial counsel]:  And you also told him that you didn't recall not being able to breathe?

[J.]:  No.  Everything happened so fast, and like I said, I don't pay attention to detail.  I am just going into my [protective] mode until it's over.

[Trial counsel]:  Did [Peterson] choke you?

[J.]:  Yes

[Trial counsel]:  Were you able to breathe?

[J.]:  I don't recall.

¶110   Trial counsel then moved on to asking J. about whether or not she had access to her phone that night and the next day.

¶111   In his postconviction motion, Peterson argued that trial counsel performed deficiently by failing to impeach J. at trial with her prior statement that she was able to breathe while Peterson had his hands around her neck.

¶112   At the *Machner* hearing, trial counsel was asked whether he considered calling the detective as a witness to impeach J. with her pretrial statement that she could always breathe while Peterson choked her.  Counsel testified that "it probably went through [his] head" but that he was satisfied with her testimony that she was unsure about whether or not she could breathe.  Counsel also testified that "I did consider it, but it was just for a moment, and it was never anything I really wanted to do….  [I]n eighty jury trials, I have never done anything like that, and when I got close to doing something like that, it's always backfired on me."  Specifically, counsel testified that he was hesitant to

call the detective to introduce J.'s pretrial statement because afterwards "the prosecutor would be able to ask questions to bolster the officer at that point and [be] able to say what was she acting like when she said this … which I think could easily backfire on me."

¶113  Counsel further testified that he did not impeach J. with her pretrial statement that she could always breathe because "after [L.] testified [that he heard J. 'gasping for air' and had the impression that J. had trouble breathing] … no one would have believed something like that."  Counsel also testified that "when you compare" J.'s and L.'s conflicting statements, "it was clear that … [t]he mom was trying to cover somewhat the best she could, you know, for Mr. Peterson," and that "it's a typical pattern you see in a domestic abuse case."  Counsel testified that J.'s mannerisms indicated to him that she was "somewhat scared," so he "wanted to handle mom with some kid gloves, and if I could get her to the point where she said she didn't remember or didn't know if she had been, you know, losing air, I was happy with that going into closing arguments, and that was more than enough for me to at least make an argument to the jury that they should come back not guilty on the strangulation."

¶114  Last, counsel noted the risk of drawing attention to unfavorable facts by impeaching J. with her pretrial statement.  Specifically, J. testified on direct examination about a prior incident where Peterson choked her until she "went black" and Peterson had to resuscitate her.  As to the conflict between that other acts evidence and J.'s pretrial statement that she could always breathe when Peterson choked her, trial counsel testified that there is "always a risk … [t]he more you push and the more I push as a defense lawyer, the more things that can come out which could be detrimental to our case as well."

40

¶115   The circuit court denied Peterson's postconviction motion as to this issue, stating that this other acts evidence regarding the incident where J. "went black" after Peterson choked her "contradicts her statement to police" that she could always breathe when he choked her.  The court stated that it

> believes that [trial] counsel's choice to not cross examine [J.] about this inconsistent statement was reasonable, given the other facts of the trial, and the defendant has not shown [trial] counsel's performance fell below professional standards.  This [c]ourt further finds that even if counsel's performance were found to fall below professional standards, the defendant has not shown that he was deprived of a fair trial with a reliable result.

2. Analysis

¶116   We conclude that Peterson fails to meet his burden to show that trial counsel's decision to not impeach J. was deficient.

¶117   We agree with the circuit court that it was reasonable trial strategy to not impeach J. with her prior statement that she could breathe while Peterson choked her.  The only way to introduce J.'s prior statement was through calling the detective as a defense witness, which, as trial counsel noted during his testimony at the *Machner* hearing, would allow the State to bolster its case by asking the detective about J.'s mannerisms and the broader context of J.'s pretrial statements.  For example, during the pretrial interview with the detective, J. also stated that she initially denied that Peterson choked her at all because if he did come home from jail she would be able to tell him she did not tell the police anything.  This additional statement could indicate to the jury that J. was willing to lie to protect Peterson or to protect herself from Peterson.  Trial counsel himself testified at the *Machner* hearing that he believed that J.'s statements were inconsistent because she "was trying to cover … for Mr. Peterson."

¶118 In addition, J.'s pretrial statement that she was "always" able to breathe when Peterson choked her was contradicted by both her trial testimony about the incident when Peterson choked her until she "went black" and L.'s trial testimony that he intervened because he heard J. gasping for air. Given this conflicting testimony, J.'s pretrial statement could provide little benefit to Peterson's defense. When also considering the risk associated with calling the detective as a defense witness, it was reasonable trial strategy to decide against impeaching J. on this point.

¶119 Peterson argues that "counsel did not articulate a reasonable strategy for not introducing [J.]'s[8] statements," and that "[c]ounsel's reasoning is too generalized and speculative to be probative." However, the *Machner* hearing transcript refutes this argument. Trial counsel explained why he was "satisfied" with J.'s testimony, why he did not want to risk highlighting the conflict between J.'s pretrial statement and her trial testimony, and why calling a police officer to impeach a victim "could easily backfire."

¶120 In sum, it was reasonable trial strategy to not impeach J. with her pretrial statement regarding her ability to breathe during the incident and, therefore, Peterson's ineffective assistance of counsel claim fails.

---

[8] Peterson writes "L.[]" instead of "J.[]" in this sentence; however, the argument Peterson makes is about J.'s statements that he argues should have been introduced, not L.'s, and thus we replace L. with J.

*B. Failing to Advocate for the Jury's Request to Have Testimony Read Back*

¶121   Peterson's second ineffective assistance of counsel claim as to count four arises out of the jury's request to have a portion of J.'s testimony read back during its deliberation, which the circuit court denied.  Peterson asserts that his trial counsel's failure to advocate for the jury's request was deficient and prejudicial so as to constitute ineffective assistance of counsel.

1.  Additional Background

¶122  During deliberation, the jury requested "clarification of [J.]'s testimony during the struggle when [Peterson] had his hands on her throat."  The circuit court immediately denied the request, stating, "I think the answer to that is they have to rely on their memories and their notes that they may have taken." Trial counsel and the State both agreed.

¶123  Peterson argued in his motion for postconviction relief that trial counsel's failure to advocate in support of the jury's request "was not based [on] a reasonable strategic decision," and therefore constituted ineffective assistance of counsel.

¶124  At the ***Machner*** hearing, trial counsel testified that he did not advocate for the jury's request because he "was satisfied with the jurors just relying upon their own recollections."  Counsel also testified that he had only had such a request granted once in eighty jury trials, and that the "typical response" to requesting testimony to be read back is that jurors should rely upon their recollections.  Counsel added that this trial only lasted for one day as opposed to a week-long trial where it may have been a long time since the witness testified. Here, because it had been "a matter of hours" since J. had testified, trial counsel's

practice "has always been, if they ask for read back, [to] … tell the judge rely upon your recollections."

¶125 The circuit court denied Peterson's postconviction motion on this issue and stated that not advocating for the jury's request was not deficient performance because "defense counsel exercised professional judgment in agreeing with the [c]ourt to have the jury rely on their collective memories and notes. As noted by the State, this is a standard practice in jury trials."

## 2. Analysis

¶126 It is within a circuit court's discretion to allow the jury to have testimony read back to it during deliberations. *See* ***Kohlhoff v. State***, 85 Wis. 2d 148, 159, 270 N.W.2d 63 (1978). Here, the circuit court made clear to the jurors and the parties prior to trial that the jury "will not have a copy of the written transcript of the trial testimony" and that the jury "must rely on [its] memory of the evidence and testimony introduced during the trial." Further, when the jury made its request to have testimony read back during deliberations, the circuit court immediately indicated that it would deny the request. "An attorney does not perform deficiently by failing to make a losing argument." ***State v. Jacobsen***, 2014 WI App 13, ¶49, 352 Wis. 2d 409, 842 N.W.2d 365.

¶127 Peterson argues that trial counsel's performance was deficient because "[h]ere, the [circuit] court failed to exercise its discretion when determining whether to read the requested testimony back to the jury," and trial counsel consented to that erroneous decision "for no strategic reason." However, the transcript refutes this argument. Trial counsel explained why his decision to not oppose the circuit court's denial of the jury's request was consistent with his

44

professional experience as a trial lawyer and why he was "satisfied" with the jurors relying on their recollections in this one-day trial during which they were allowed to take notes.

¶128 The transcript also refutes Peterson's conclusory assertion that had "trial counsel … requested that the testimony be read back to the jury, the court … would have allowed the jury to hear the testimony." Peterson cites no part of the record, or any legal authority, that supports such an assertion.

¶129 In sum, Peterson fails to meet his burden to show that trial counsel's performance on count four constitutes ineffective assistance of counsel.

**CONCLUSION**

¶130 For the reasons stated above, we conclude that there was sufficient evidence for a jury to convict on count one, that the circuit court did not err in allowing the State to amend counts one and four, and that Peterson was not denied his right to effective assistance of counsel as to counts one and four. Accordingly, we affirm the circuit court on all issues.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.